In the

# United States Court of Appeals
## For the Seventh Circuit

No. 09-1930

KIRSTEN MAJESKI,

*Plaintiff-Appellant,*

*v.*

METROPOLITAN LIFE INSURANCE CO.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 3206—**Maria G. Valdez**, *Magistrate Judge.*

ARGUED NOVEMBER 18, 2009—DECIDED DECEMBER 29, 2009

Before WOOD, EVANS, and TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.* Kirsten Majeski was employed by Metropolitan Life Insurance Company ("MetLife") and participated in MetLife's Short Term Disability Plan, which is governed by the Employee Retirement Income Security Act ("ERISA"). This appeal concerns MetLife's decision to reject Majeski's claim for short-term disability benefits. MetLife determined that Majeski had failed to submit enough evidence to support her claim.

Majeski filed suit, but the district court granted summary judgment against her. Although MetLife's determination is entitled to deferential review, we conclude that there are such significant gaps in the evidence supporting its decision that further proceedings are necessary.

**I**

Majeski worked for MetLife as a nurse consultant, which required her to sit at a desk and use a computer and telephone throughout the normal eight-hour workday. In June 2006, after complaining of pain and numbness in her shoulders, arms, and hands, Majeski was diagnosed with cervical radiculitis, a disorder of the spinal nerve roots. See STEDMAN'S MEDICAL DICTIONARY 1622 (8th ed. 2006). She applied for benefits from MetLife's Short Term Disability Plan, which defines a participant as "disabled" when, as the result of "illness or accidental injury," she is "receiving appropriate care and treatment from a doctor on a continuing basis" and "unable to earn more than 80% of [her] pre-disability earnings at [her] own occupation for any employer in [the] local economy." The plan grants discretionary authority to the plan administrator to interpret its terms and determine a participant's entitlement to benefits. MetLife initially approved a temporary award of short-term disability benefits to allow Majeski to pursue treatment, but eventually it determined that she was not eligible for benefits beyond August 25, 2006, because, in its view, her medical records did not objectively establish any functional impairments that would prevent her from continuing her work as a nurse consultant.

Majeski appealed. In response to MetLife's assertion that she had not presented objective evidence establishing any functional impairments, she submitted newly obtained medical evidence. David Weiss, a physiatrist (that is, a rehabilitation specialist), completed a five-page Cervical Spine Residual Functional Capacity Questionnaire that documented Majeski's "significant limitations" in repetitive reaching, handling, and fingering. Dr. Weiss indicated that Majeski could use her hands to grasp, turn, and twist objects for 25 percent of the workday, that she could use her fingers for fine manipulation 100 percent of the time, and that she could not use her arms for reaching. Dr. Weiss also reported that Majeski could not sit in a "competitive work situation" any longer than 45 minutes without needing to take a break. But in another part of the questionnaire, Dr. Weiss reported that Majeski did not have significant limitation of motion. Majeski later explained to MetLife that Dr. Weiss had misinterpreted the part of the questionnaire where he was asked to document Majeski's limitations in repetitive reaching, handling, and fingering. Dr. Weiss amended the questionnaire simply by crossing out "100 percent" under the column "Fingers: Fine Manipulation" and writing instead "0 percent," indicating that Majeski could not use her fingers for fine manipulation at all.

In addition, Susan Hardin, a physical therapist, examined Majeski, tested her functional capabilities, and then submitted a Functional Capacity Evaluation Summary that documented her findings. Hardin concluded that Majeski's limitations on sitting and typing made it impossible for her to return to her job as a nurse consultant.

Hardin's conclusion was based on a Physical Work Performance Evaluation, which consists of 36 tasks, including a 30-minute "sitting test." The evaluation revealed that, although Majeski was capable of performing physical work at the medium level of exertion, she could sit only occasionally and could not type more than eight-and-a-half minutes without experiencing significant pain. (In other words, in Hardin's view, although Majeski was able to perform at the greater exertional level of "medium," she could not—perhaps unlike most people—handle a more sedentary position.) Hardin also observed that Majeski's cervical spine, shoulders, wrists, and elbows were capable of a range of motion within functional limits.

MetLife then asked Phillip Marion, an independent physician consultant who is board-certified in physical medicine, rehabilitation, and pain management, to review Majeski's medical records and evaluate whether she had any functional limitations that would preclude sedentary work, particularly sitting and using a telephone and computer. Dr. Marion responded on March 1, 2007, that there were "minimal objective findings on physical and neurological examination" to support a finding of functional limitations. He added that Majeski was "otherwise independent with activities of daily living, ambulation, and not restricted from driving a motor vehicle." Although Dr. Marion acknowledged Hardin's finding that Majeski could perform medium-level work, he did not address either the limitations Hardin had identified on Majeski's ability to sit and type or Hardin's conclusion that Majeski could not work as a nurse consultant. Nor did Dr. Marion mention Dr. Weiss's

questionnaire, which is not listed among the medical records MetLife submitted to Dr. Marion. Dr. Marion issued a second report on March 27 in which he concluded that additional medical evidence submitted by Majeski's neurologist did not change his opinion.

On March 28, MetLife forwarded Dr. Marion's reports to Dr. Weiss and asked him to respond with comments by April 10. MetLife also alerted Majeski's counsel to the deadline. Dr. Weiss responded unhelpfully on April 6 with a single sentence: "I disagree with the decision of Dr. Marion." On April 12, after MetLife's deadline for comment on Dr. Marion's reports had passed, Majeski's counsel faxed a letter to MetLife seeking to introduce deposition testimony that Dr. Marion had recently given in an unrelated case; allegedly this testimony revealed Dr. Marion's predisposition to rule in favor of employers and against claimants, regardless of the evidence. Because the deposition testimony ran more than 200 pages, the attachment did not accompany the fax but was instead contained on a CD that Majeski's counsel mailed that same day. But without reviewing (and possibly before receiving) Dr. Marion's deposition testimony, MetLife determined on April 18 that Majeski was not disabled. MetLife cited Dr. Marion's conclusion that Majeski's medical records neither contained objective findings nor supported an inference of functional impairments.

Under the terms of MetLife's plan, Majeski's disability benefits could be reduced by the amount of Social Security disability benefits she was eligible to receive, whether or not she actually applied for those benefits. Majeski

accordingly submitted an application to the Social Security Administration in May 2007 and received a favorable determination in March 2008.

Majeski sued MetLife in federal court, challenging the denial of disability benefits under ERISA. See 29 U.S.C. § 1132(a)(1)(B). After the parties agreed that a magistrate judge could handle the case, the district court granted summary judgment against Majeski. Because MetLife's plan grants discretionary authority to the plan administrator, the district court ruled that it would review MetLife's determination under the arbitrary-and-capricious standard. In so doing, it rejected Majeski's argument that *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008), requires a heightened standard of review in light of MetLife's conflict of interest as both the plan administrator and payor of benefits. The district court also rejected Majeski's attempt to introduce Dr. Marion's deposition testimony and Majeski's Social Security award, neither of which was part of the administrative record. But the district court did consider "general evidence that Dr. Marion had an ongoing financial relationship with MetLife," reasoning that this must have been known to MetLife. Even so, the district court determined that there was no evidence that Dr. Marion was predisposed to rule against claimants and that it was not unreasonable for MetLife to have asked him to review Majeski's medical records. After considering all the medical evidence that was before MetLife, as well as MetLife's conflict of interest, the district court concluded that it was reasonable for MetLife to determine that Majeski was not disabled.

**II**

A

Majeski begins with an argument that we have rejected: *Glenn*, she urges, requires a reviewing court to apply a heightened standard of review whenever a plan administrator is, like MetLife, also the payor of benefits. See *Black v. Long Term Disability Ins.*, 582 F.3d 738, 744-45 (7th Cir. 2009); *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 n.1 (7th Cir. 2009); *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 831 (7th Cir. 2009). But see *Montour v. Hartford Life & Accident Ins. Co.*, 582 F.3d 933, 936 (9th Cir. 2009) (introducing "more complex application of the abuse of discretion standard" in response to *Glenn*). Counsel has done what is necessary to preserve this question for further review, and so we proceed to the specifics of Majeski's case.

What this court is still pondering is just *how* to consider a plan administrator's conflict of interest. There are two possible ways to read *Glenn*. See *Marrs v. Motorola, Inc.*, 577 F.3d 783, 788 (7th Cir. 2009). On the one hand, *Glenn* might require a reviewing court to consider a plan administrator's conflict of interest in all cases, mixing it in somehow with all other relevant factors. *Marrs* acknowledged that this court endorsed that reading in its early decisions applying *Glenn*, pointing in particular to *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009). See also *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444, 449-50 (7th Cir. 2009); *Fischer v. Liberty Life Assurance Co. of Boston*, 576 F.3d 369, 375 (7th Cir. 2009); *Leger*, 557 F.3d at 831.

But *Marrs* expressed discomfort with a standard of decision "in which unweighted factors mysteriously are weighed" and instead adopted a "more directive" reading of *Glenn* that focuses on the "gravity" of a plan administrator's conflict of interest. *Marrs*, 577 F.3d at 788-89. *Marrs* takes the position that the gravity of the conflict, and thus the likelihood that the conflict influenced the plan administrator's decision, should be inferred from the circumstances of the case, including the reasonableness of the procedures by which the plan administrator decided the claim, any safeguards the plan administrator has erected to minimize the conflict of interest, and the terms of employment of the plan administrator's staff that decides benefit claims. *Id.* at 789.

B

Majeski next argues that, in light of *Glenn* and two cases from the Fifth Circuit and the Eighth Circuit that apparently endorse more searching review in conflict cases, the district court should have parted ways with this court's precedent. In conducting this review, she continues, the district court should have considered evidence that was not part of the administrative record, namely Dr. Marion's deposition and her Social Security award.

But Majeski's expansive reading of *Glenn* loses sight of the distinction between deferential review and *de novo* consideration. Majeski rightly observes that *Glenn* gave more weight to the plan administrator's conflict of interest because the plan administrator there had first

encouraged the claimant to file for Social Security benefits, then received the bulk of those benefits, and finally ignored the Social Security Administration's finding when determining whether the claimant was disabled under the terms of the plan. 128 S. Ct. at 2352; *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998) (recognizing significance of same sequence). But the Social Security award in *Glenn* was already part of the administrative record, and no credible reading of *Glenn* would require a plan administrator to reopen a closed appeal and consider a later Social Security award simply so that a reviewing court has a more complete record under which to examine the plan administrator's conflict of interest. In short, nothing that we see in *Glenn* supports Majeski's contention that MetLife must allow her to supplement the administrative record without limit, even if she is offering evidence of a reviewing doctor's bias.

Nor are we persuaded by the Fifth Circuit case Majeski cites. *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999), does allow a claimant to supplement the administrative record and ask the plan administrator to reconsider its determination at any point before filing suit in federal court, but *Vega* is an outlier whose reasoning does not stand on firm ground. See *Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 320 (5th Cir. 2007) (observing that *Vega* is inconsistent with circuit precedent and poses numerous practical problems); *Anderson v. Cytec Indus., Inc.*, 2009 WL 911296, *7 & n.9 (E.D. La. Mar. 27, 2009) (speculating that *Vega* might "offend fundamental policy"). And *Sloan v. Hartford Life & Accident Insurance Co.*, 475 F.3d 999, 1004-05 (8th Cir. 2007), concerns a *de novo* decision on the right

to benefits, which is a different matter altogether. Accord *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009).

## III

That said, it remains true that deferential review is not a euphemism for a rubber-stamp. We find it troubling that Dr. Marion's report—the sole basis for MetLife's determination—concludes, erroneously, that Majeski did not submit objective evidence of functional limitations. Dr. Marion does not acknowledge, much less analyze, the significant evidence of functional limitations that Majeski offered. Dr. Marion notes Hardin's conclusion that Majeski could perform medium-level work, but he ignores Hardin's critical qualification that Majeski was nevertheless incapable of typing and sitting. Dr. Marion's statement that Hardin's evaluation "does not document, nor is it reasonable to conclude from it, that the claimant has functional limitations that precluded sedentary work activity requiring sitting, using a computer and telephone" is simply not true. Hardin explicitly says that Majeski cannot sit or type sufficiently to return to her former job as a nurse consultant. And Dr. Marion does not even mention Dr. Weiss's questionnaire (nor is it listed under the documents sent to him for review).

In our view, these omissions make Majeski's case like two other recent decisions in which we have found a plan administrator's determination arbitrary and capricious. In *Leger*, we held that it was arbitrary and capricious for a plan administrator to "ignore" and "dismiss out of hand" evidence in a functional-capacity evaluation that a

claimant was not capable of sitting, concluding this was an "absence of reasoning in the record." 557 F.3d at 834-35. And in *Love*, we found it arbitrary and capricious for a plan administrator "simply [to] ignore" a treating physician's medical conclusion and to "dismiss [other] conclusions without explanation." 574 F.3d at 397-98.

We cannot square MetLife's treatment of Hardin's evaluation and Dr. Weiss's questionnaire with *Leger* and *Love*'s insistence that procedural reasonableness is the cornerstone of the arbitrary-and-capricious inquiry. *Leger* explains that arbitrary-and-capricious review turns on whether the plan administrator communicated "specific reasons" for its determination to the claimant, whether the plan administrator afforded the claimant "an opportunity for full and fair review," and "whether there is an absence of reasoning to support the plan administrator's determination." 557 F.3d at 832-33 (internal quotation marks and citation omitted). By ignoring Majeski's key medical evidence, MetLife can hardly be said to have afforded her an opportunity for full and fair review, and its failure to address that evidence in its determination surely constitutes an absence of reasoning. *Love* goes further and unambiguously requires a plan administrator to "address any reliable, contrary evidence submitted by the claimant." 574 F.3d at 397 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)).

We recognize that at some point we are dealing with a question of degree. A plan administrator need not delve into medical evidence that is irrelevant to its primary concern. Nor must plan administrators annotate every paragraph of a thousand-page medical record. Closer to

the line, there may be circumstances in which it would not be unreasonable if a plan administrator inadvertently overlooked one of several medical reports that reached the same conclusion it had already rejected. But a plan administrator's procedures are not reasonable if its determination ignores, without explanation, substantial evidence that the claimant has submitted that addresses what the plan itself has defined as the ultimate issue—here, whether Majeski's functional limitations were objectively documented. See 29 C.F.R. § 2560.503-1(g)(iii) (requiring plan administrator to describe in adverse benefit determination "additional material or information necessary for the claimant to perfect the claim" and explain why).

Majeski has asked us to rule directly in her favor, but we are not inclined to short-circuit the process established by MetLife's plan. When a plan administrator fails to provide adequate reasoning for its determination, our typical remedy is to remand to the plan administrator for further findings or explanations. See *Love*, 574 F.3d at 398; *Leger*, 557 F.3d at 835; *Tate v. Long Term Disability Plan for Salaried Employees of Champion Int'l Corp. No. 506*, 545 F.3d 555, 562-63 (7th Cir. 2008). This is not the rare case where the record before us contains such powerfully persuasive evidence that the only determination the plan administrator could reasonably make is that the claimant is disabled.

Because there will be further proceedings, we address briefly Majeski's remaining arguments, which we find to be without merit. Majeski argues that it was arbitrary and capricious for MetLife to terminate her benefits

without showing that her condition had improved, but that is merely one factor to consider. See *Leger*, 557 F.3d at 831-32. It is not relevant here because MetLife only temporarily approved Majeski's claim to allow her to pursue treatment. Majeski also argues that MetLife unreasonably attempted to "reclassify" her work status from a sedentary-level nurse consultant to a medium-level registered nurse. But MetLife's decisions to terminate Majeski's benefits and to deny her appeal both correctly identify her work status, as do Dr. Marion's reports, and so any error was harmless. Finally, Majeski argues that it was arbitrary and capricious for MetLife to dismiss her pain as subjective and to demand objective evidence of how her pain limited her functional capabilities. But although a plan may not deny benefits solely on the basis that the symptoms of the claimed disability are subjective, *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003), a plan may deny benefits because a claimant has failed properly to document pain-induced functional limitations, *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 323 (7th Cir. 2007).

The decision of the district court is VACATED and the case is REMANDED so that the district court may return this matter to MetLife for further proceedings consistent with this opinion.