**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 23, 2009
Decided September 14, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 08-2441

BRIAN MEADE,
      *Plaintiff-Appellant*,

      *v.*

NATIONAL CITY CORPORATION
WELFARE PLAN,
      *Defendant-Appellee*.

Appeal from the United States District
Court for the Northern District of Illinois,
Western Division.

No. 07 C 50201

Philip G. Reinhard,
*Judge*.

**O R D E R**

Brian Meade was injured in an automobile accident when another car rear-ended the one he was driving. He received short-term disability benefits from the National City Corporation Welfare Plan, and, when those expired, he began receiving long-term disability benefits. About fifteen months after he began receiving long-term benefits, the plan administrator notified Meade that it was terminating his long-term benefits because it did not consider him "disabled" under the plan. National City's Claims Appeal Committee upheld the

determination, and Meade filed suit in federal court. We agree with the district court that National City had no obligation to reopen his closed appeal to consider new evidence, including a determination from the Social Security Administration that he was disabled under that agency's standard. We also agree that National City considered Meade's cognitive impairments and that its decision to terminate his long-term benefits was not arbitrary and capricious. Therefore, we affirm the grant of summary judgment in National City's favor.

## I. BACKGROUND

Brian Meade worked as a branch manager for the National City Mortgage Company. In that role, he managed the activities of a branch office in the origination, processing, and closing of residential mortgage loans, and he led a small staff. The National City Mortgage Company is a subsidiary of the National City Corporation, and Meade was a participant in the Corporation's Welfare Benefits Plan. The claims administrator was Liberty Life Assurance Company of Boston ("Liberty Mutual").

Meade was in a car accident unrelated to his job on July 2, 2004, when a vehicle traveling approximately 40 to 50 miles per hour rear-ended his car. The impact pushed Meade's car forty feet. Meade went to the emergency room. He was diagnosed with whiplash injuries, prescribed medication, and released.

Meade later visited his family physician, who prescribed new medications. On July 13, 2004, Meade visited Dr. Stephen Mull, and Dr. Mull diagnosed Meade with cervical thoracic strain due to the accident. Dr. Mull prescribed physical therapy and continued Meade on muscle relaxants and pain relievers. On August 3, he diagnosed Meade with acute neck pain, and he indicated on a September 3, 2004 form that Meade was unable to work due to severe neck pain and decreased range of motion. Dr. John Mansell saw Meade on August 13, 2004 and noted on a form that Meade suffered a fracture in his cervical spine, and that his condition caused Meade profound decreased range of motion and pain with almost any movement. Dr. Mansell later administered trigger point injections into Meade's cervical spine.

Meade's last day of work was August 12, 2004. He applied for and received short-term disability benefits from National City that began on August 20, 2004, and he received them for the maximum term of 26 weeks. Meade then applied for long-term disability payments, and he began receiving those payments in February 2005. In addition, in July 2005, he applied for benefits from the Social Security Administration.

In the meantime, Meade continued to seek and receive treatment. Dr. Mull indicated in December 2004 that Meade was experiencing dizzy spells and difficulty in mental focusing in addition to ongoing shoulder, neck, and upper back pain. Dr. Michael Roh evaluated Meade in December 2004 and confirmed the diagnoses of chronic whiplash syndrome and disc herniation. He recommended soft tissue manipulation and immobilization and referred Meade to the Mayo Clinic for evaluation. Meade had a neuropsychological examination at the Mayo

Clinic on April 7, 2005. On October 12, 2005, Dr. Trent Barnhardt, one of Meade's treating physicians, noted on a Liberty Mutual Functional Capacities Form that Meade was unable to engage in substantial work activities. On July 6, 2006, Meade had a pain consultation with Dr. Nalini Sehgal, a specialist in pain management, and he diagnosed Meade with whiplash associated disorder and muscoskeletal abnormalities.

Liberty Mutual, the plan's claims administrator, also retained physicians to assess Meade's ability to work. In December 2005, Dr. Richard Corzatt, one of the Liberty Mutual-retained physicians, reviewed Meade's file and concluded that Meade could not presently engage in sedentary work but should recover sufficiently to return to a sedentary occupation. Liberty Mutual also referred Meade to a neurosurgeon, Dr. Marc Soriano, for an independent medical examination. On March 14, 2006, Dr. Soriano reviewed Meade's medical treatment history and examined him. Dr. Soriano concluded that there was no objective source supporting a functional impairment and that objective testing did "not correspond to his apparently exaggerated complaints." Dr. Soriano stated that Meade's reports of being unable to read or use a computer for more than two or three minutes were inconsistent with his reported ability to watch children's basketball games, drive a car, and watch television without adverse effects. Dr. Soriano also wrote that when asked, Meade reported an inability to abduct his arms more than 50 degrees. However, Dr. Soriano wrote, Meade tolerated abduction beyond 90 degrees without complaining of pain when he was being tested in other respects and was not aware that his arms were abducted as they were. Dr. Soriano also documented that although Meade walked slowly, stiffly, and haltingly while in the examination room, Dr. Soriano watched through a window as Meade walked to his car in a normal fashion. Liberty Mutual faxed a copy of this report to Meade's family physician, Dr. Barnhart, and asked for his comments on Dr. Soriano's findings. Dr. Barnhart did not respond.

On May 11, 2006, pointing in part to Dr. Soriano's report and conclusions, Liberty Mutual informed Meade that it was terminating his long-term disability benefits. Meade appealed and submitted letters in support of his appeal from two physical therapists and from his new primary care physician. The plan provides that when an adverse decision is based on medical judgment, a review of the claim must be conducted by a health care professional with appropriate training and experience who was not consulted in connection with the adverse decision. Pursuant to this requirement, Dr. Michael Hoffman, a neurosurgeon, reviewed Meade's file at Liberty Mutual's request and concluded that Meade that there was no reason Meade could not perform his job as branch manager. National City's Appeal Committee denied Meade's appeal in March 2007.

The next month, the Social Security Administration concluded that Meade was "disabled" under the Social Security Act. In August 2007, Meade asked that his long-term disability claim with National City be reopened to consider new evidence, namely the Social Security Administration's determination, the contents of the Social Security disability claim file,

and an additional neurospsychological report. The Appeal Committee did not reopen Meade's file.

Meade filed suit in federal court challenging the termination of his long-term benefits. The district court concluded that the decision to terminate benefits was not arbitrary and capricious, and it granted summary judgment in National City's favor.   Meade appeals.

## II.  ANALYSIS

When a plan gives its administrator full discretion and authority to determine eligibility for benefits, as here, we review a decision denying benefits under the arbitrary and capricious standard of review.  *See Marrs v. Motorola, Inc.*, 577 F.3d 783, 786  (7th Cir. 2009).  The Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), did not change this standard of review.  *See Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 482 (7th Cir. 2009); *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 831 (7th Cir. 2009); *Black v. Long Term Disability Ins.*, 582 F.3d 738, 744-45 (7th Cir. 2009).

### A.     No Error in Failing to Consider New Evidence

Meade argues that National City should have considered evidence he submitted after the Appeal Committee denied his appeal.  About a month after that determination, the Social Security Administration concluded that Meade was "disabled" under the Social Security Administration standard.  Several months later, Meade submitted a copy of the Social Security decision and underlying Social Security claim file to the plan administrator, along with a recently completed neuropsychological assessment.  He asked that the plan administrator reopen his claim to consider this new evidence, but it did not do so.   Although under the plan, "[a]ll claims appeal decisions are final and binding," Meade contends that National City should have reopened his case to consider the new evidence he submitted.

The claimant in *Majeski v. Metropolitan Life Insurance Co.*, 590 F.3d 478 (7th Cir. 2009) made a nearly identical argument, and, unfortunately for Meade, we rejected it.  We recognized in *Majeski* that the Supreme Court's decision in *Glenn* gave more weight to a plan administrator's conflict of interest because that administrator had encouraged the claimant to file for Social Security benefits but later ignored the Social Security Administration's determination when assessing whether the claimant met the plan's definition of "disabled." Nonetheless, we said: "But the Social Security decision in *Glenn* was already part of the administrative record, and no credible reading of *Glenn* would require a plan administrator to reopen a closed appeal and consider a later Social Security award simply so that a reviewing court has a more complete record under which to examine the court plan administrator's conflict of interest." 590 F.3d at 483.   In so holding, we distinguished the two cases to which Meade points.  We noted that *Sloan v. Hartford Life & Accident Insurance Co.*, 475 F.3d 999, 1004-05 (8th Cir. 2007), involved a de novo decision on the right to benefits, which we said was "a different matter altogether."  *See Majeski*, 590 F.3d at 483; *see also Krolnik v. Prudential Ins. Co. of*

*Am.*, 570 F.3d 841, 843 (7th Cir. 2009) ("When review is deferential – when the plan's decision must be sustained unless arbitrary and capricious – then review is limited to the administrative record."). We also recognized that the court in *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999), had allowed a claimant to supplement the administrative record, but we rejected that case as an outlier. *See Majeski*, 590 F.3d at 483. Indeed, plans have a legitimate interest in the finality of their decisions, and the plan in this case made its decisions final upon the Appeal Committee's determination. *See Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1047 (7th Cir. 2004). In line with *Majeski*, we conclude that National City's failure to consider materials submitted after the Appeal Committee decision does not constitute error or necessitate a remand.

## B.     Cognitive Impairments Considered

Meade also argues that the decision to deny him benefits was arbitrary and capricious because, he maintains, National City overlooked his cognitive impairments and depression. Notably, Meade does not challenge the Appeal Committee's determination that there was no identifiable cause for the claimed physical symptoms which he admits were his "primary" allegations of disability.

The plan contains different standards for short-term and long-term benefits. For the long-term benefits at issue in this case, the plan requires a showing that the participant's condition makes him "unable to perform the duties of your particular job . . . After you have been disabled for two years . . . [t]he Plan Administrator must determine that your condition makes you unable to perform the duties of any other occupation for which [he is], or could become, qualified by education, training or experience." Meade sought benefits within two years after his injury, so National City analyzed whether he could perform the duties of his job as branch manager.

The arbitrary and capricious standard of review is deferential, and we will not substitute our judgment for that of the administrator as long as the administrator makes an informed decision and articulates an explanation that is satisfactory in light of the relevant facts. *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007). However, "'we will not uphold a termination [of benefits] where there is an absence of reasoning in the record to support it.'" *Love v. National City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 (7th Cir. 2009), (quoting *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003)). In addition, ERISA administrators must address reliable evidence of eligibility submitted by a claimant and communicate specific reasons to a claimant for a denial of benefits. *Id.*

Meade argues that his cognitive impairments were not assessed in combination with his physical impairments. The record reflects, however, shows otherwise. The Appeal Committee decision  reflects that the Committee considered his cognitive complaints, as its decision letter states in part:

> Although Mr. Meade reports subjective complaints of neck pain, shoulder pain, thoracic pain, difficulty raising arms above shoulders, headaches, blurry vision, and difficulty reading, these subjective complaints are not substantiated by any objective finding. Review of radiological test results, MRI, CT, x-rays does not indicate acute objective findings. Complaints are unsubstantiated, such as inability to lift arms; however there was no atrophy or objective test result. The Committee noted inconsistency in Mr. Meade's reports of inability, such as unable to read, however, he is still able to do other activities requiring use of vision, such as watch TV, drive, and watch sporting events.

In addition, Dr. Soriano's report specifically set forth complaints Meade made relating to his cognitive impairments. Dr. Soriano's description of Meade's current complaints included that Meade could not read for more than two to three minutes because he becomes dizzy, the room spins, and he becomes nauseated, as well as that he had pain radiating behind his right ear and eye. Dr. Soriano's report also recounted that Meade's wife read a written description of the purpose of the exam to Meade because Meade alleged that he could not read it and said he would become dizzy and experience other neurological symptoms after more than a few minutes of reading. And he stated that Meade's "overall affect is blunted," an observation that Meade appeared depressed when Dr. Soriano examined him.

Dr. Soriano went on to state, however, that although Meade made these complaints, he found the complaints unsubstantiated by any objective findings in the normal neurological examination he performed. Dr. Soriano concluded that he believed Meade's complaints regarding his vision were "exaggerated." Notably, Dr. Soriano based his conclusion in part on his own examination of Meade. *Cf. Love v. National City Corp. Welfare Benefits Plan*, 574 F.3d 392 (7th Cir. 2009) (independent medical examiner reviewed the file but did not examine the claimant); *Gessling v. Group Long Term Disability Plan for Employees of Sprint/United Mgmt. Co.*, 693 F. Supp. 2d 856 (S.D. Ind. Mar. 16, 2010) (same). Dr. Soriano also pointed out that Meade was able to attend sporting events and watch television without experiencing similar problems with his eyes.

Dr. Hoffman's report also reflects that he considered Meade's cognitive complaints. He wrote that Meade's complaints of headaches, blurry vision, and difficulty reading, along with his complaints of other pain, were not substantiated by objective findings, and he noted that Meade's neurological examination had been normal.[1]

---

[1] Dr. Hoffman's report notes that he had a phone conversation with Meade's primary care physician, Dr. Barnhart, about a month before Dr. Hoffman filed his report. According to Dr. Hoffman's notes, Dr. Barnhart stated Meade was taking a lot of pain medication and he did not feel comfortable giving him medication, so he referred him to another doctor, as well as that there was a lack of objective findings.

Meade also emphasizes that neither Dr. Soriano nor Dr. Hoffman mentioned the April 2005 neuropsychological examination he had at the Mayo Clinic. That report notes in the "History of Present Illness" section that Meade "admits that he has some cognitive difficulty since the accident, but he cannot really say if it is progressing or improving. He does have some cognitive complaints as have already been outlined in the medical record." The report's "Impression/Report/Plan" section states "comprehension intellectual ability is firmly in the average range . . . verbal comprehension intellectual ability is actually high average. Working memory is somewhat lower and just within the average range. Lexical and semantic fluency performances are normal. Delayed auditory verbal memory of paragraph-length information is normal. Acquisition of a supraspan word list presented over serial presentations is mildly to moderately reduced." The report also noted learning efficiency that was lower than expected and in the compromised range but that the percentage of information recalled thirty minutes later was normal. As the district court noted, nothing in this report was so compelling or different from that in other referenced documentation that the failure to mention the report means we would set aside the decision. *See Davis v. Unum Life Ins. Co. of American*, 444 F.3d 569, 578 (7th Cir. 2006) (consulting physicians need not recite every piece of evidence reviewed).

Our standard of review asks whether the denial decision was arbitrary and capricious, which means that we ask only "whether [the] decision to deny [the claimant] benefits finds rational support in the record." *Fischer v. Liberty Life Assur. Co. of Boston*, 576 F.3d 369 (7th Cir. 2009). Although some of the medical opinions in this case differ as to whether Meade's conditions were disabling, under our deferential standard of review, we must defer to National City's choice between competing medical opinions so long as the choice is rationally supported by record evidence. *Black v. Long Term Disability*, 582 F.3d 738, 746 (7th Cir. 2009). The denial decision has rational support here. None of Meade's physicians identified an organic cause of his pain, and they recommended against any surgical treatment. The explanations given by the consulting physicians and Appeal Committee shows that they adequately considered Meade's cognitive complaints, and they presented reasonable explanations for their conclusions. *See id.* Therefore, National City was entitled to believe them. Finally, that National City both determined eligibility for benefits and paid them does not alter our conclusion. Although *Glenn* instructs that a conflict of interest is one factor to be considered in conducting our review, we do not find it pushes things over the edge here. *See Glenn*, 128 S. Ct. at 2351 ("any one factor will act as a tie-breaker when the other factors are closely balanced, the degree of closeness necessary depending on the tie-breaking factors inherent or case-specific importance").

### III. CONCLUSION

The judgment of the district court is AFFIRMED.