In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 10-3898 & 11-1006

SUSIE WEITZENKAMP,

*Plaintiff-Appellant,*
*Cross-Appellee,*

*v.*

UNUM LIFE INSURANCE COMPANY OF AMERICA,

*Defendant-Appellee,*
*Cross-Appellant.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 1:09-cv-01017-WCG—**William C. Griesbach**, *Judge.*

ARGUED MAY 11, 2011—DECIDED SEPTEMBER 20, 2011

Before ROVNER and HAMILTON, *Circuit Judges*, and
LEFKOW, *District Judge.**

LEFKOW, *District Judge.* After being diagnosed with
fibromyalgia, chronic pain, anxiety, and depression,

---

* The Honorable Joan Humphrey Lefkow of the Northern
District of Illinois, sitting by designation.

Susie Weitzenkamp was awarded long-term disability benefits under an employee benefit plan ("the plan") issued and administered by Unum Life Insurance Company ("Unum"). Benefits were discontinued a little more than twenty-four months later, when Unum determined that Weitzenkamp had received all to which she was entitled under the plan's self-reported symptoms limitation. Because Weitzenkamp had retroactively received social security benefits, Unum also sought to recoup equivalent overpayments as provided by the plan. On appeal, Weitzenkamp challenges the application of the self-reported symptoms limitation to her case and argues that Unum's claim for overpayment is barred because the Social Security Act prohibits attachment or garnishment of social security payments. On July 11, 2011, we issued an opinion affirming in part and reversing in part. Unum filed a petition for panel rehearing, and we requested an answer, which was filed. By separate order we granted the petition and vacated the original opinion and final judgment. For the reasons that follow, we reverse the district court's judgment as to Unum's application of the self-reported symptoms limitations and affirm as to the social security overpayment claim.

## I.

Weitzenkamp worked at Time Warner Cable Inc. as a sales representative. Weitzenkamp participated in the plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001

*et seq.*, and administered by Unum. The plan gives Unum discretion to determine eligibility and to interpret the plan's terms. A participant who is limited from performing the material and substantial duties of her regular position due to sickness or injury that results in a twenty percent or more loss in indexed monthly earnings is entitled to long-term benefits. After twenty-four months of payments, the disability determination is revisited, with the criterion changing from being unable to perform one's own occupation to being unable to perform any occupation. As long as a participant meets the "any occupation" standard, benefits continue until she is no longer disabled or has reached the maximum period of payment, which, for someone like Weitzenkamp who was under sixty at the onset of her disability, is to age sixty-five. One significant and relevant limitation exists, however, as benefits cease after twenty-four months for those with "[d]isabilities, due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness, alcoholism or drug abuse." Self-reported symptoms are "the manifestations of your condition which you tell your doctor that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine." The plan provides a non-exhaustive list of self-reported symptoms: "headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy."

As required under ERISA, Unum provided Weitzenkamp and others covered by the plan with a summary plan description ("SPD"). The SPD states that "[p]ayments

for *disabilities* other than those attributable to *mental illness* or substance abuse may continue until the earlier of the date you recover or the date shown on the schedule."[1] The twenty-four month limitation for disabilities due to mental illness and substance abuse is reiterated two more times in the SPD. No mention is made, however, of the self-reported symptoms limitation.

On December 13, 2005, after a viral illness, Weitzenkamp's physician certified that she was unable to work. She continued to suffer from ongoing pain and fatigue and was eventually diagnosed with fibromyalgia, chronic pain, anxiety, and depression. After exhausting her short-term disability benefits, Weitzenkamp sought long-term disability benefits. Unum approved Weitzenkamp's request on July 25, 2006, retroactive to June 12, 2006, under a reservation of rights. The approval letter included language from the plan on what was considered a disability but did not mention the self-reported symptoms limitation. Unum removed its reservation of rights on January 29, 2007, but also invoked the self-reported symptoms and mental illness limitations, indicating it would pay benefits until June 11, 2008 unless other conditions arose to which the limitation did not apply.

Unum required Weitzenkamp to apply for social security benefits. She was awarded social security disability benefits in September 2007 based on a primary diagnosis of affective disorder and a secondary diagnosis

---

[1]  The schedule lists the maximum period of payment.

of muscle and ligament disorders due to fibromyalgia. The award was retroactive to December 13, 2005. As provided in the plan, Unum reduced Weitzenkamp's monthly benefit accordingly. As Unum also had reserved the right to recover any overpayments that resulted from a participant's retroactive receipt of social security benefits, it requested that Weitzenkamp reimburse it for this amount. Some of this overpayment was recovered, but a balance of $9,089 remains.

In 2008, Unum reviewed Weitzenkamp's medical records to determine whether she remained eligible to receive benefits.[2] Weitzenkamp's treating rheumatologist, Dr. Kent Partain, submitted a fibromyalgia assessment form, indicating that Weitzenkamp met the criteria for fibromyalgia, including the presence of multiple tender points. Dr. Partain identified Weitzenkamp's symptoms as chronic pain, non-restorative sleep, muscle weakness, morning stiffness, subjective swelling, frequent, severe headaches, numbness and tingling, chronic fatigue, Raynaud's phenomenon, irritable bowel syndrome, depression, and carpal tunnel syndrome. Weitzenkamp was said to have constant pain in all areas of her body. He also indicated that Weitzenkamp had a disc protrusion and moderate cervical spondylosis. Dr. Partain concluded that "[d]espite interventions by neurology,

---

[2] We need only consider evidence regarding Weitzenkamp's fibromyalgia for purposes of this appeal as it is undisputed that the mental illness limitation applies to Weitzenkamp's other diagnoses.

psychiatry, psychology, neuropsychology, orthopedics, physiatry, integrative medicine, [and a] pain program with multiple interventions from these services, [Weitzenkamp] remains unable to work."

Dr. Daniel Krell, one of Unum's medical consultants, reviewed Weitzenkamp's records and concluded that, although she had no reliable, sustainable functional capacity, no documented findings of a physical condition existed to explain her symptoms. He also opined that Weitzenkamp was overstating her symptoms based on her having consistently indicated that her pain levels were between eight and ten on a ten-point scale. Dr. Krell's opinion was then reviewed by Dr. Gary Greenhood, another Unum medical consultant. Dr. Greenhood disagreed with Dr. Krell's assessment that Weitzenkamp's condition was not documented but concluded that the pain keeping her from working was a self-reported symptom of fibromyalgia. Dr. Greenhood noted that several verifiable and reproducible findings consistent with pain existed: two x-rays indicated mild degenerative change in Weitzenkamp's right hip and two MRIs showed moderate cervical spondylosis and a disc protrusion with an annular tear and a mild disc bulge. Because Dr. Partain's evaluation of Weitzenkamp did not reference degenerative findings of the hips or cervical or lumbar spines, Dr. Greenhood concluded that Weitzenkamp's pain was not due to these verified findings but rather to fibromyalgia. Based on these reports, portions of which were reproduced word for word in its letter to Weitzenkamp, Unum discontinued Weitzenkamp's benefits based on the self-reported

symptoms and mental illness limitations on August 22, 2008. It acknowledged that Weitzenkamp was receiving social security benefits but indicated that the plan's limitations, which differed from social security standards for disability determinations, precluded her from receiving further plan benefits.

Weitzenkamp appealed through the designated appeal process. She submitted an additional letter from Dr. Partain, in which he stated that his diagnosis of fibromyalgia rested on "a history and physical examination consistent with this condition plus ruling out other conditions that can mimic fibromyalgia syndrome with various laboratory testing that was done." He indicated that Weitzenkamp qualified as having "the typical 11 or more out of 18 tender points" even though some authorities did not believe that it was necessary to have eleven tender points to be diagnosed with fibromyalgia. Unum referred Weitzenkamp's appeal to Dr. Norman Bress, a rheumatologist, for further review. Dr. Bress indicated that Weitzenkamp met the criteria for fibromyalgia but highlighted that there was no evidence in the record that she had been examined for control points "in order to determine the reliability and specificity of the tender point exam." He noted that the majority of patients with fibromyalgia could work full time and that Weitzenkamp had done so for many years prior to her date of disability even though she had symptoms prior to that date. He also indicated that Weitzenkamp's condition was based on self-reported symptoms, as even tender points "are based on the patient's response to the examiner's palpation."

Dr. Bress concluded that Weitzenkamp's claimed limita-
tions were not supported by her fibromyalgia-related
symptoms. After accounting for Dr. Bress's conclusions,
Unum affirmed its decision on June 18, 2009. In its letter
of explanation, Unum did not dispute Weitzenkamp's
diagnosis of fibromyalgia but instead emphasized that
Weitzenkamp's pain, being the primary symptom as-
sociated with her fibromyalgia, was based on self-re-
port. As such, benefits were limited to twenty-four
months by the self-reported symptoms limitation.

Weitzenkamp then filed this lawsuit. Unum counter-
claimed, seeking recoupment of the overpayment created
by Weitzenkamp's retroactive receipt of social security
benefits. Both parties moved for summary judgment.
The district court found that to the extent Unum's dis-
continuation of benefits was based on a finding that
she was not disabled, that decision was arbitrary
and capricious. But the district court upheld Unum's
application of the self-reported symptoms limitation.
It also concluded that Unum is entitled to $9,089 as a
result of its overpayment of benefits. Weitzenkamp
now appeals. Unum filed a conditional cross-appeal
to preserve its right to appeal the district court's deter-
mination that Unum's finding of no disability was
arbitrary and capricious if we reverse the judgment.

## II.

We review the district court's grant of summary judg-
ment *de novo*. *Jenkins v. Price Waterhouse Long Term Disabil-
ity Plan*, 564 F.3d 856, 860 (7th Cir. 2009). Where, as here,

the plan grants the administrator the discretion to determine eligibility and construe the plan terms, we review the administrator's decision under an arbitrary and capricious standard. *Id.* Under this standard, "an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language." *Wetzler v. Ill. CPA Soc'y & Found. Ret. Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009). In evaluating whether the administrator's decision was arbitrary and capricious, we may consider, among other factors, the administrator's structural conflict of interest and the process afforded the parties. *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995); *see also Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 482 (7th Cir. 2009) (the gravity of the administrator's conflict of interest may be "inferred from the circumstances of the case, including the reasonableness of the procedures by which the plan administrator has decided the claim").[3]

---

[3] Weitzenkamp, in her reply brief, argues that a *de novo* standard should apply to our review because of certain perceived procedural errors Unum committed in processing her claim. She cites to no law supporting this position, however. These alleged procedural violations do not mandate a different standard of review but instead will be considered as factors in determining whether Unum's decision to discontinue benefits was arbitrary and capricious. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008) ("We do not believe that *Firestone*'s statement implies a change in the *standard* of review, say, from deferential to

(continued...)

**A.**

Weitzenkamp makes numerous arguments regarding the substantive unreasonableness of Unum's application of the self-reported symptoms limitation to her benefits claim. The district court concluded that the self-reported symptoms limitation applies to Weitzenkamp's fibromyalgia because the pain and fatigue associated with it, like the diagnosis itself, cannot be independently verified. The district court's interpretation was informed by Unum's intention "to curtail the possible abuse and malingering that could occur for claims based on conditions that are, at their core, based on credibility rather than verifiable tests or procedures." 2010 WL 4806979, at *7 (E.D. Wis. Nov. 19, 2010); *see id.* at *8 ("Although making such a limitation explicit would have been clearer, it is not as though the definition of self-reported symptoms is shrouded in mystery. It limits benefits based on claims of pain, fatigue, soreness, etc. and that is all we have here."). It held that Unum's denial of benefits was not arbitrary and capricious.[4]

---

[3] (...continued)
*de novo* review. Trust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion.").

[4] While Weitzenkamp did admit in the district court that the amount of pain cannot be objectively verified, she also argued
(continued...)

To determine whether the self-reported symptoms limitation applies here, we begin with the language of the plan, which provides in relevant part:

> Disabilities, due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness, alcoholism or drug abuse have a limited pay period up to 24 months.

> Self-reported symptoms means the manifestations of your condition which you tell your doctor that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

The plan limits payment for "[d]isabilities, due to sickness or injury, which are primarily based on self-reported symptoms," but the parties disagree as to what this clause means. Unum alleges that the focus is on whether the limitation on function is primarily based on self-reported symptoms. Although Weitzenkamp's argument is convoluted at times, she argues at least in part that the focus must be on whether the diagnosis of the disease itself is primarily based on self-reported symptoms.

---

[4] (...continued)
that Unum ignored objective evidence of her pain and disability including MRIs, steroid injections, range of motion testing, physical examinations, and trigger point testing.

Although one can read the clause literally as Unum proposes (the plural self-reported systems clause modifies the plural "Disabilities" rather than the singular "illness or injury," suggesting that if the inability to perform work is self-reported, the limitation applies), when the clause is considered in context and in light of actual application, the only viable conclusion is that the self-reported symptoms limitation applies to disabling illnesses or injuries that are *diagnosed* primarily based on self-reported symptoms rather than to all illnesses or injuries for which the *disabling symptoms* are self-reported. The contrary interpretation advanced by Unum would sweep within the limitation virtually all diseases, leaving only a small subset for coverage beyond that time period. For most illnesses or injuries, the disabling aspect is not the disease itself, but the pain, weakness, or fatigue caused by that illness or injury. Even diseases that are extremely likely to cause an inability to work, such as stage IV cancer or advanced heart disease, are disabling because of the pain, weakness or fatigue. Under Unum's interpretation, however, those diseases would fall within the twenty-four-month limitation because pain, weakness and fatigue are self-reported symptoms that are difficult if not impossible to verify using objective medical evidence. In fact, at oral argument, Unum conceded that under its interpretation the provision would limit coverage for all conditions in which the disabling symptom is pain. Unum even maintained this was true regardless of the etiology of the pain, so that even if the underlying condition were highly likely to cause pain, the limitation would apply

because the pain itself is self-reported and not verifiable. Despite this bold assertion, we have no indication that Unum actually applies or proposes to apply this limitation to disabilities based on diagnoses that can be objectively verified by clinical tests, procedures, and clinical examinations. Neither could this court countenance a reading that would allow Unum arbitrarily to disallow any illness or injury that it preferred not to cover while not making that explicit in its SPD. Although we must give deference to the administrator's interpretation of the plan terms, *see Marrs v. Motorola, Inc.*, 577 F.3d 783, 787 (7th Cir. 2009) (citing *Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1011 (7th Cir. 1998)), we cannot conclude that Unum's interpretation is reasonable.

The remaining question is whether the diagnosis of disabling fibromyalgia in the present case was based primarily on Weitzenkamp's self-reported symptoms or on objective medical evidence. Weitzenkamp was diagnosed following the 18-point "trigger test" for the condition. We have recognized that the trigger test can "more or less objectively" establish the disease where the findings of the test are consistent with fibromyalgia. *Hawkins v. First Union Corp. Long-Tem Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003). *Chronister v. Baptist Health*, 442 F.3d 648, 656 (8th Cir. 2006), held that the claimant's fibromyalgia was not within the self-reported symptoms limitation in light of that court's having already accepted that the trigger test "qualifies as a clinical examination standardly accepted in the practice of medicine." Significantly, even Unum does not

dispute that the diagnosis is objectively verifiable. Be-
cause the disabling illness in this case, fibromyalgia, is not
primarily based on self-reported symptoms, but rather
can be based on the verifiable evidence of its manifesta-
tions, the self-reported symptoms limitation does not
apply in this case.[5]

**B.**

The district court found that Unum is entitled to
recover $9,089 in overpayments it made to Weitzenkamp.
Weitzenkamp does not dispute that Unum may recover
an overpayment of benefits pursuant to the reimburse-
ment provision in the plan. *See Gutta v. Standard Select
Trust Ins. Plan*, 530 F.3d 614, 620-21 (7th Cir. 2008) (citing
*Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 126 S. Ct. 1869,
164 L. Ed. 2d 612 (2006)). While she did not raise any
opposition to Unum's counterclaim in the district court,
Weitzenkamp now argues that § 207(a) of the Social
Security Act, 42 U.S.C. § 407(a), precludes Unum from
recovering any overpayment that resulted from her

---

[5] This conclusion obviates our need to address the issue on
which we rested our initial opinion, that Unum's failure to
include the self-reported symptoms limitation in the
SPD warranted granting Weitzenkamp equitable relief. We
acknowledge, without deciding, that *CIGNA Corp. v. Amara*, __
U.S. ___, ___ , 131 S. Ct. 1866, 1877, 179 L. Ed. 2d 843 (2011),
may undermine that result because Weitzenkamp has failed
to identify any harm that flowed from the failure to include
the limitation in the SPD.

receipt of social security benefits. Generally, "we will not consider an argument not passed on below, but we may appropriately do so where, as here, the parties have briefed it and the resolution is clear." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011).

Section 207(a) provides that social security benefits shall not "be subject to execution, levy, attachment, garnishment, or other legal process." Weitzenkamp argues that Unum's counterclaim effectively seeks an equitable lien on her social security benefits. True, Unum cannot impose a lien directly on Weitzenkamp's social security benefits. But Unum recognizes this and instead seeks an equitable lien on specific funds it paid Weitzenkamp under the plan to which it has a claim for reimbursement. This does not contravene § 207(a). *See Hall v. Liberty Life Assurance Co. of Boston*, 595 F.3d 270, 274-75 (6th Cir. 2010). To paraphrase *Cusson v. Liberty Life Assurance Co. of Boston*, 592 F.3d 215, 232 (1st Cir. 2010), although the amount in question happens to be the same as the amount of Weitzenkamp's retroactive social security payment, the funds Unum is targeting do not come from social security. Rather, they come from overpayments Unum paid to Weitzenkamp. Thus, § 207(a) does not bar recovery.

### III.

Unum filed a conditional cross-appeal to preserve its right to challenge the district court's non-dispositive finding that Unum's determination of no disability was arbitrary and capricious. This challenge by way of cross-

appeal was procedurally improper. A cross-appeal is appropriate only if a prevailing party seeks a judgment different from that rendered by the district court. *See United States v. Tarkowski*, 248 F.3d 596, 602-03 (7th Cir. 2001). With its cross-appeal, Unum seeks not to alter the judgment, *i.e.*, the bottom line, but to advocate an alternate ground for affirming the district court's judgment that the denial of benefits was proper. While advancing this alternate ground asks us to reject the district court's reasoning on the no disability issue, such an attack can and should have been raised by Unum in this appeal. *See Wellpoint, Inc. v. C.I.R.*, 599 F.3d 641, 650 (7th Cir. 2010) ("[T]he appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, *although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it*." (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435, 44 S. Ct. 560, 68 L. Ed. 1087 (1924)). We indicated as much to Unum in a show-cause order issued in No. 11-1006 prior to Unum's having filed its brief in this case. Unum maintained, however, that its cross-appeal was proper, relying on *Council 31, American Federation of State, County, & Municipal Employees, AFL-CIO v. Ward*, 978 F.2d 373, 380 (7th Cir. 1992), a case in which we decided a conditional cross-appeal of the district court's class certification order after reversing its grant of summary judgment in the defendant's favor. Subsequent cases, however, have reiterated the rule that cross-appeals are not appropriate in routine cases like ours that raise only alternate grounds for affirmance of the judgment

and not an independent issue like the propriety of class certification. *See, e.g.*, *Am. Bottom Conservancy v. U.S. Army Corps of Eng'rs*, No. 10-3488, slip op. at 16 (7th Cir. June 14, 2011); *Tarkowski*, 248 F.3d at 602-03. As Unum did not raise its alternate arguments in this appeal, it forfeited the ability to challenge the district court's finding on the disability issue.

## IV.

What remains, then, is to determine the appropriate remedy, either reinstatement of benefits or remand to Unum for further proceedings consistent with this opinion. "In fashioning relief for a plaintiff who has sued to enforce her rights under ERISA, we have focused 'on what is required in each case to fully remedy the defective procedures given the *status quo* prior to the denial or termination' of benefits." *Schneider v. Sentry Grp. Long Term Disability Plan*, 422 F.3d 621, 629 (7th Cir. 2005) (quoting *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003)). Here, Unum had previously determined that Weitzenkamp was entitled to benefits under the "own occupation" standard. Her benefits were terminated approximately two months after the "any occupation" standard took effect. In its denial letter, Unum agreed that Weitzenkamp did not "have reliable, sustainable functional capacity at any level of physical demand" while at the same time noting that the Social Security Administration's evaluation of her functional capacity indicated that she was not precluded from performing her own occupation.

Weitzenkamp's treating rheumatologist, however, concluded that "[d]espite interventions by neurology, psychiatry, psychology, neuropsychology, orthopedics, physiatry, integrative medicine, [and a] pain program with multiple interventions from these services, [Weitzenkamp] remains unable to work." The district court found that Unum's arguments against this conclusion failed even under arbitrary and capricious review. After a review of the record, we agree that the record evidence points to a finding of disability under the "any occupation" standard. *See Holmstrom v. Met. Life Ins. Co.*, 615 F.3d 758, 778 (7th Cir. 2010) ("[W]e tend to award benefits when the record provides us with a firm grasp of the merits of the participant's claim."). Reinstatement of benefits, retroactive to August 22, 2008, is thus appropriate. Unum is free to revisit Weitzenkamp's present eligibility for benefits, proceeding in a manner consistent with this opinion and that of the district court on the disability issue.

## CONCLUSION

We reverse the district court's judgment on the application of the self-reported symptoms limitation and remand with instructions to order Unum to reinstate Weitzenkamp's benefits retroactive to August 22, 2008. We affirm the judgment on Unum's counterclaim. Unum's cross-appeal, No. 11-1006, is dismissed.