RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SONYA L. HALL,
      *Plaintiff-Appellant/Cross-Appellee,*

            *v.*

LIBERTY LIFE ASSURANCE COMPANY OF
BOSTON,
                              *Defendant,*

NATIONAL CITY CORPORATION WELFARE
BENEFITS PLAN,
      *Defendant-Appellee/Cross-Appellant.*

Nos. 08-4738/4739

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-00649—John R. Adams, District Judge.

Argued: December 4, 2009

Decided and Filed: February 8, 2010

Before: SILER, GILMAN, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Robert Armand Perez, Sr., THE PEREZ LAW FIRM CO., L.P.A., Cincinnati, Ohio, for Appellant. Michael E. Smith, FRANTZ WARD LLP, Cleveland, Ohio, for Appellee. **ON BRIEF:** Robert Armand Perez, Sr., THE PEREZ LAW FIRM CO., L.P.A., Cincinnati, Ohio, for Appellant. Michael E. Smith, FRANTZ WARD LLP, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

    RONALD LEE GILMAN, Circuit Judge. Sonya Hall received long-term disability benefits for nearly five years through the National City Corporation Welfare Benefits Plan (the Plan). Liberty Life Assurance Company of Boston (Liberty Life), the third-party claims

administrator, terminated these benefits when it determined that Hall was no longer totally disabled. The Plan then sought reimbursement for overpayments caused by retroactive Social Security benefits' being awarded to Hall. Hall responded by filing suit against the Plan.

Concluding that the termination of her long-term disability benefits was not arbitrary and capricious, the district court denied Hall's claim for reinstatement and further found that the Plan was entitled to partial reimbursement. The court also imposed an equitable lien on Hall's Social Security benefits to allow the Plan to recover the overpayments. Hall has appealed these decisions, and the Plan has cross-appealed the district court's denial of its request for attorney fees pursuant to 28 U.S.C. § 1927. For the reasons set forth below, we **AFFIRM** the judgment of the district court regarding the Plan's termination of benefits and its claim for partial reimbursement, **VACATE** the district court's imposition of an equitable lien on Hall's Social Security benefits and its denial of attorney fees to the Plan, and **REMAND** the case to the district court for reconsideration of the equitable-lien and attorney-fees issues.

## I. BACKGROUND

### A.    Factual background

Hall was a full-time employee at the National City Corporation and eligible for benefits under the Plan. She started receiving short-term disability payments in May 2001 following spinal-fusion surgery. In November 2001, Hall began receiving long-term disability payments in monthly installments of $2,333.45 each. Liberty Life informed Hall by letter that she was required to apply for Social Security benefits and, if she was approved, that those benefits would partially offset the amount paid by the Plan. The letter further stated that Hall's eligibility to continue receiving long-term disability benefits was predicated on certification of her continued disability.

In December 2002, Hall received notice that she was required to undergo an evaluation to determine whether she still met the definition of "totally disabled." Hall underwent an independent medical examination in June 2003. The examining doctor concluded that although Hall might be able to return to work at some point in the future, she

was still totally disabled. As a result of this examination, Liberty Life informed Hall by letter that she would continue receiving long-term disability benefits, but added that it would conduct periodic reevaluations to verify that she still met the "totally disabled" definition.

As part of these reevaluations, Liberty Life in 2005 submitted Hall's medical records for review by Dr. Gale G. Brown, Jr., board-certified in physical medicine, rehabilitation, and internal medicine, and Dr. Peter M. Mirkin, board-certified in psychiatry and neurology. Both doctors opined that Hall could return to work. Dr. Brown concluded that although Hall was impaired, she was able to perform her job duties, noting that Hall frequently engaged in such activities as driving, walking, and reading. Focusing on Hall's psychiatric condition, Dr. Mirkin similarly found nothing that would prevent Hall from resuming her job duties.

As an additional component of its review, Liberty Life requested a skills analysis from a vocational expert. The expert issued a report, based on recommendations contained in Dr. Brown's report, finding that Hall could perform the duties of several occupations, including a receptionist at a small business, a new-account clerk, an information clerk, or an accounting clerk.

Based on this review, Liberty Life concluded that Hall was no longer "totally disabled" under the terms of the Plan. It therefore terminated her benefits in May 2006. Hall appealed that decision, relying largely upon reports of Dr. Norton Winer from 2002 to 2004 in which he stated that Hall could not tolerate an eight-hour workday. Dr. Winer was Hall's treating physician.

Following a review by an independent medical panel, Liberty Life upheld its determination that Hall was no longer eligible to receive benefits. As part of its assessment, the panel solicited Drs. Stephen Vanna and Judith Willis, two physicians who were both board-certified in psychiatry and neurology, to conduct separate file reviews to determine whether Hall was "totally disabled" under the Plan's terms. The two physicians concluded that Hall no longer met this definition. Dr. Willis highlighted a report from Dr. Winer in which Dr. Winer opined that Hall could "sit, push, pull, reach, grasp, and repetitively move her wrist, elbow, shoulder, and ankle frequently, stand, walk, and occasionally, drive up to two hours." In a second report relied upon by Dr. Willis, Dr. Winer had also acknowledged that Hall could work as a clerk. Dr. Vanna, in his analysis, relied in part on a telephone

conversation with Dr. Winer, during which Dr. Winer told Dr. Vanna that Hall showed "some disability, but probably [was] not totally disabled." Based on this conversation and his review of Hall's medical records, Dr. Vanna concluded that Hall's complaints were of a subjective nature.

During this time period, Hall was also pursuing Social Security benefits. Despite denying her initial requests, the Social Security Administration in 2006 awarded Hall retroactive benefits dating back to January 2002, the point in time at which it determined that Hall was totally disabled.

**B.      Procedural background**

Hall filed suit in March 2007, seeking reinstatement of her benefits. Concluding that the Plan's termination of benefits was not arbitrary and capricious, the district court denied Hall's motion for a judgment awarding benefits and instead granted the Plan's motion for judgment on the administrative record. Shortly before the court ruled on those two motions, the Plan filed a motion to add a counterclaim seeking reimbursement for its overpayments to Hall. The Plan contended that the overpayments came about when the Social Security Administration awarded Hall long-term disability benefits retroactively, which entitled the Plan to an offset per the terms of the Plan.

Following what it described as a "hailstorm of motions," the court granted the Plan's motion for summary judgment on its claim for partial reimbursement. In that same order, the court denied the Plan's request for attorney fees that the Plan had incurred due to the allegedly vexatious conduct of Hall's attorney.

**II. ANALYSIS**

**A.      Issues on appeal**

Hall appeals the district court's findings that the Plan's termination of her disability benefits was proper and that the Plan is entitled to reimbursement for the overpayments that it made to Hall. On cross-appeal, the Plan contends that the district court erred by not granting its request for attorney fees pursuant to 28 U.S.C. § 1927. We address each of these issues in turn.

**B.        Termination of benefits**

Hall first argues that the Plan's termination of her benefits was improper, and she further asserts that the district court erroneously reviewed the Plan's decision under the arbitrary-and-capricious standard. After carefully considering the record on appeal, the briefs of the parties, and the applicable law, and having the benefit of oral argument, we agree with the district court's analysis of these two issues. Hall has made no persuasive claims of error on appeal, including her argument that the Plan is estopped from terminating her disability benefits because it required Hall to seek Social Security benefits. Because the district court articulated its reasoning in a thorough and comprehensive opinion, the issuance of a detailed written opinion by us regarding these issues would be unduly duplicative. The judgment rendered by the district court regarding the proper standard of review and the Plan's termination of Hall's benefits is accordingly affirmed on the basis of the reasoning detailed in its Opinion dated April 25, 2008.

Notwithstanding our affirmation of the district court's analysis, we note two inaccuracies in its opinion. First, in evaluating the Plan's May 2006 determination that Hall was no longer permanently disabled, the district court observed that both a neurosurgeon and Dr. Winer called the results of a magnetic resonance imaging (MRI) of Hall's lumbar spine "completely normal." But the MRI did not cover Hall's cervical spine, which was the source of her primary complaint of disability. Even without the MRI, however, there is was sufficient evidence in the record to support the conclusion that Hall's injuries did not continue to render her completely disabled.

Secondly, the district court erroneously stated that Hall "unsuccessfully" appealed a 2004 decision by an administrative law judge (ALJ) denying her Social Security benefits, when in fact that decision was overturned on appeal to the district court in 2006. Hall was subsequently found to be disabled and entitled to benefits by a different ALJ. The 2006 district court opinion is not particularly helpful to Hall, however, because it held only that the ALJ improperly weighed medical evidence rather than calling upon a medical expert to do so. Neither the court's ruling on appeal nor the second ALJ's decision provides a reasoned explanation for why Hall was entitled to disability benefits. As such, these errors do not change the outcome of the case.

**C.     Reimbursement of overpayments**

Hall next appeals the district court's determination that the Plan is entitled to reimbursement for the overpayments it made due to Hall's retroactive receipt of Social Security benefits. We similarly agree with the district court's conclusion in this regard, and we affirm on the basis of the court's Opinion dated October 31, 2008, with the exception of the court's decision to impose an equitable lien directly upon Hall's future Social Security benefits for reimbursement of the Plan's overpayments. Such a lien is prohibited by federal statute.

A plan fiduciary is permitted to bring a claim for equitable relief to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3). For restitution of insurer overpayments to be of an equitable nature, the restitution must involve the imposition of a constructive trust or equitable lien on "particular funds or property in the [insured's] possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). The plan must identify a particular fund, distinct from an insured's general assets, and the portion of that fund to which the plan is entitled. *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006).

Courts are not permitted, however, to place a lien directly on the Social Security benefits themselves. 42 U.S.C. § 407(a) ("The right of any person to any future payment under [federal Social Security law] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable . . . shall be subject to execution, levy, attachment, garnishment, or other legal process . . . ."). The equitable lien in this case must therefore be limited to a specifically identifiable fund (the overpayments themselves) within Hall's general assets, with the Plan entitled to a particular share (all overpayments due to her receipt of Social Security benefits, not to exceed the amount of benefits paid). *See Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 45-46 (6th Cir. 2007).

The lien imposed by the district court deviated from the principles set forth in *Gilchrest* because the court imposed the lien directly on the Social Security benefits received by Hall. This is impermissible because the Plan has no claim to Hall's future Social Security benefits prior to the point at which they are in her possession. The Plan conceded this point during oral argument. Accordingly, we find that the district court erred in imposing an equitable lien directly upon Hall's future Social Security benefits.

**D.     Attorney fees**

As a final matter, we address the district court's denial of the Plan's request for attorney fees. A district court's decision to grant or deny sanctions, whether arising under either 28 U.S.C. § 1927 or Rule 11 of the Federal Rules of Civil Procedure, is reviewed under the abuse-of-discretion standard. *Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 739 (6th Cir. 2008) (citing *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) ( "As with Rule 11 sanctions, we review an order awarding attorney fees under § 1927 for an abuse of discretion.")). "This court has defined an abuse of discretion as a definite and firm conviction that the trial court committed a clear error of judgment." *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003) (citation and internal quotation marks omitted). Such an error occurs "when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Geier v. Sundquist*, 372 F.3d 784, 789-90 (6th Cir. 2004) (citation omitted).

Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A court may sanction an attorney under § 1927 for unreasonably and vexatiously multiplying the proceedings even in the absence of any "conscious impropriety." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009) (citation omitted). The proper inquiry is not whether an attorney acted in bad faith; rather, a court should consider whether "an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Id.* (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997)). An award of fees under the statute thus requires "a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Id*. (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006)).

The district court in this case was critical of Hall's attorney, noting that the Plan "has been forced to spend an inordinate amount of time and money defending against repeated meritless motions filed by [Hall] in an attempt to have a second, third, or further bite at the

apple in the litigation of her benefits claim." Yet the district court declined to award the Plan attorney fees "given Plaintiff's purported financial situation."

That reason does not support the denial of fees. The rationale for the district court's decision—Hall's "purported financial situation"—is an improper basis for denying fees under § 1927 because the statute authorizes the imposition of sanctions only on "any attorney or other person admitted to conduct cases." 28 U.S.C. § 1927; *see also Rentz*, 556 F.3d at 395-96 (observing that fees under § 1927 may be imposed only on parties' attorneys, rather than on the parties themselves). No other reason was offered to support the denial of the Plan's request for attorney fees. Under an abuse-of-discretion standard, we cannot uphold the district court's reliance solely on a factor irrelevant to the § 1927 inquiry.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court regarding the Plan's termination of benefits and its claim for partial reimbursement, **VACATE** the district court's imposition of an equitable lien on Hall's Social Security benefits and its denial of attorney fees to the Plan, and **REMAND** the case to the district court for reconsideration of the equitable-lien and attorney-fees issues.