NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0164n.06

No. 12-3040

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Feb 13, 2013**
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ADAM McCOY and ROBIN McCOY, individually and on behalf of John Doe, a minor, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE SOUTHERN DISTRICT OF OHIO |
| BOARD OF EDUCATION, COLUMBUS CITY SCHOOLS; COLUMBUS LOCAL SCHOOL DISTRICT; GENE T. HARRIS, Superintendent; DORA KUNZ, Program Manager, | ) ) ) ) | OPINION |
| Defendants-Appellees. | ) ) | |
| and | ) ) | |
| GARY A. STROUP, et al., | ) ) | |
| Defendants. | ) ) | |

Before:  MARTIN, SILER, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.**  This case arises from the tragic molestation

of a fourth-grade student by his teacher in the illusory safety of the classroom.  As unfortunate as the

facts of this case may be, we discern no reason under federal or state law to impute liability to the

defendants.  Accordingly, we **AFFIRM** the decision of the district court.

I.

Gary Stroup was a fourth-grade teacher employed by Columbus City Schools. In 1999, while serving as a teacher at Hudson Elementary School, Stroup was engaged in an incident where he kicked a female student in her buttocks. Soon thereafter, Stroup was involved in another incident where a student tripped over a tub and Stroup grabbed the student's arm. Upon investigating the two incidents, John Tornes, the Director of Certificated Personnel, issued a formal letter in which he directed Stroup "to ensure [he] *never* place[s] [his] hands on or become[s] physical with students as a matter of direction or discipline."

In 2000, another instance of impropriety was alleged against Stroup in which a student claimed that Stroup had pinched students' chests and posteriors. The incident was reported to the principal, who believed that "conferencing with Mr. Stroup [did] not encourage correction or [a] change [in] his behavior," recommending "stronger discipline [sic] action" as a result. In response, Stroup contended that his actions were in response to various behavioral problems of the students. Tornes issued yet another letter of direction, expressly instructing Stroup "never to touch or pat the behind of a student[,] . . . [or] to squeeze student[s'] shoulders . . . to be careful of frontal hugs . . . [and] never to pinch a student."

Stroup transferred to Winterset Elementary School for the 2000-2001 academic year. During the 2003-2004 school year, a student alleged that Stroup touched his thigh. The matter was referred to Dora Kunz, Winterset's principal. Stroup explained that he accidentally touched the student's leg in an attempt to steady himself while rising from the classroom floor after assisting the student with his work. All parties involved were satisfied with this explanation and the assurance that the contact

was non-sexual. Kunz referred the matter to Tornes, who opted not to proceed because the allegations of impropriety could not be fully substantiated.

The incident was revisited when the same student, in writing an unrelated apology letter to Kunz, reasserted that Stroup had touched him in "public" areas. Stroup, in response, expressed his displeasure "about the nonsense from earlier in [the] year" to which the student was referring. Kunz later departed from Winterset, with Theresa Tracy (née Sadek) succeeding her as principal. Tracy had no knowledge of this incident.

In the spring of 2005, the unfortunate sequence of events leading to this litigation arose. A Winterset student reported that both she and the plaintiff of the present case, John Doe, had been touched by Stroup. The student asserted that Stroup had touched Doe on at least five occasions in the classroom. Stroup summoned Doe to review his work and, in doing so, planted his hand down Doe's pants and fondled his genitals. Doe did not return to Winterset after these accusations were made.

An investigation by law enforcement and child services revealed that other students had been victims of Stroup's misconduct. This led to a fifteen-count indictment against Stroup for gross sexual imposition in violation of section 2907.05 of the Ohio Revised Code. Stroup entered an *Alford* plea[1] for two counts and was sentenced to ten years' incarceration, surrendering his teacher's license in the process.

---

[1] *See generally North Carolina v. Alford*, 400 U.S. 25 (1970).

Doe, through his parents ("the McCoys"), filed suit against the Columbus City Schools' Board of Education, the School District, Gene Harris (the current superintendent), Dora Kunz, and Gary Stroup, alleging violations of substantive due process, Title IX, and related state tort law claims.[2] Upon completion of discovery, the Board and Kunz filed motions for summary judgment; in response, the McCoys cross-filed a motion for partial summary judgment. The McCoys also filed a motion for leave to amend the complaint to add Tornes as a defendant.

The magistrate judge denied the motion for leave to amend, noting that the deadline for such motions under the pretrial scheduling order had long passed. In doing so, the court highlighted that "[p]laintiffs knew more than two months before the deadline for motions to amend that Mr. Tornes was a person of responsibility involved in the underlying incident. His deposition . . . was taken three months before the filing of [the McCoys'] motion for leave to amend." The McCoys filed a motion for reconsideration, which the district court denied.

The district court granted summary judgment in favor of the defendants. On the state law claims, the court concluded that the defendants were entitled to judgment as a matter of law because of statutorily-provided immunity. The court also rejected the argument that Kunz was not entitled to immunity because she acted in a wanton or reckless manner, explaining that "no reasonable juror could conclude that her actions were done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct created an unnecessary risk of harm." As for the

---

[2] For ease of reference, we collectively refer to the Board, School District, and Superintendent as "the Board," unless noted otherwise. Kunz and Stroup are separately represented, and will be denoted accordingly.

McCoys' § 1983 claims, the district court held that the superintendent's context-based approach was not "tantamount to a custom or policy of deliberate indifference." With respect to Kunz, the court concluded that "there was no pattern of abuse or notable indication of a risk of abuse"; thus, no § 1983 liability could attach. Finally, the court dismissed the McCoys' Title IX claim because there was no evidence that the Board "had the requisite knowledge or acted unreasonably to incur liability." Accordingly, except for the Stroup claims, the case was dismissed in its entirety on summary judgment. The McCoys timely appealed.

II.

We review a district court's grant of summary judgment *de novo*. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving its entitlement to summary judgment. *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 430 (6th Cir. 2012). In deciding the summary judgment motion, the district court assesses "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citation omitted). All facts are viewed and all reasonable inferences are drawn in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Because the McCoys' Title IX claim shares the overlapping component of deliberate indifference with their § 1983 claims, we begin with Title IX. The statute provides that "[n]o person

. . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (2006). The duty not to discriminate on the basis of sex extends to include teacher-on-student sexual harassment. *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005). If a plaintiff proves that (1) a school district had actual notice of the sexual harassment; and (2) exhibited deliberate indifference in light of such notice, a school district may be held liable for damages. *Id.*

Even assuming that the McCoys could satisfy the actual notice prong of the Title IX inquiry, they have failed to prove the school board's deliberate indifference. Deliberate indifference can be found in cases where officials of a recipient entity with authority to take corrective action, having been advised of a Title IX violation, decide not to remedy the violation. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-91 (1998). Put differently, deliberate indifference arises when "school officials are aware of the misconduct but do nothing to stop it, despite [the school district's] ability to exercise control over the situation." *Horner v. Ky. High Sch. Athletic Assn.*, 206 F.3d 685, 692 (6th Cir. 2000). The recipient entity's response to the harassment must be clearly unreasonable in light of the known circumstances to be actionable under Title IX. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). "[T]he deliberate indifference must, at a minimum, 'cause [students] to undergo harassment or 'make them liable or vulnerable' to it." *Id.* at 644.

A failure to take *any* disciplinary action despite reports of repeated sexual harassment rises to the level of deliberate indifference. *See id.* at 654 (noting that a school board may have exhibited deliberate indifference because no attempt at investigating or ameliorating the harassment took

place). In less obvious cases, the proportionality of the school's response in light of available information lies at the heart of the indifference analysis. *See id.* at 648 ("School administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed 'deliberately indifferent' to acts of . . . harassment only when the recipient's response to the harassment or lack thereof is clearly unreasonable *in light of the known circumstances*.") (emphasis added).

Two of our cases illustrate the relationship between school officials' level of knowledge and the reasonableness of their actions. In *Patterson v. Hudson Area Schools*, 551 F.3d 438 (6th Cir. 2009), a school district was made aware of pervasive verbal and physical student-on-student harassment that took place over the span of four years. School officials, cognizant of the escalating harassment, responded mostly by verbally reprimanding the harassing students. *Id.* at 448. These reprimands, while effective in admonishing a particular harassing student, failed to stop the systemic harassment of the targeted student. *See id.* Aggravating the indifference was the fact that the school district had once successfully combated the harassment at a systemic level, but later made a conscious decision not to continue with such an effective system. *Id.* at 448-49. In light of the school district's failure to employ more effective methods in light of increasing degrees of harassment and its own awareness that its measures were ineffective, we concluded that the continued employment of such ineffective methods in light of increasingly severe harassment provided a genuine issue of material fact as to the school district's deliberate indifference. *See id.* at 450.

Similarly, in *Vance v. Spencer County Public School District*, 231 F.3d 253 (6th Cir. 2000), a female student was repeatedly exposed to verbal and physical harassment that increased in severity,

culminating in an attempted sexual assault and repeated sexual propositions by fellow students. *Id.* at 256-57. An investigation never occurred; instead, a teacher spoke with the students implicated in the harassment, including the victim-plaintiff. *Id.* at 262. We determined that inaction in these circumstances reflected a deliberate indifference. *Id.*

In contrast to these two cases, the nature and severity of Stroup's misconduct was not as apparent to school officials. Even assuming that the sequence of events provided actual notice to the district and its officials, the propriety of the district's response is measured by the known circumstances—i.e., there is a connection between what school officials know and whether their response is clearly unreasonable. Here, the known circumstances were sparse; prior to Doe's allegations, the school was made aware of several instances of physical contact that were ostensibly non-sexual but could have served as potential indicia for sexual malfeasance. Confronting these facts, the school district conducted an informal investigation in each instance, responding with either a directive to Stroup not to engage in physical contact or no action if the investigation was inconclusive.

In hindsight, the school district could certainly have done more. But this is not the standard by which we impose liability. Rather, we look to whether the school district's actions were clearly unreasonable so as to rise to the level of deliberate indifference. *See Davis*, 526 U.S. at 648. Given the close call as to the nature of the allegations previously made against Stroup, it was not clearly unreasonable for the school district to have issued letters directing Stroup not to engage in such physical contact. Had there been a more discernible and explicit form of sexual harassment, in the form of verbal or physical sexual contact, the district's decision to repeat its measures may have

constituted deliberate indifference. Without more, however, the McCoys' Title IX claim fails under the summary judgment standard.

## III.

For the same reason, the McCoys' § 1983 claims must also fail. Section 1983 permits a person deprived of "any rights, privileges, or immunities secured by the Constitution and laws," under the color of "any statute, ordinance, regulation, custom, or usage, of any State," to seek redress. In this case, however, the statute does not provide a valid basis for seeking redress against the school board or the individually-named defendants.

## A.

We first examine the McCoys' municipal liability claim. To determine its validity, we look to (1) whether the plaintiff has asserted that he has been deprived of a constitutional right; and (2) whether the municipal educational entity is responsible for that violation. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 505-06 (6th Cir. 1996). In *Doe*, we held that "a schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee." *Id.* at 506. In the present case, none of the Appellees contest the conclusion that Doe's injuries would constitute a deprivation of a constitutional right. Therefore, for municipal liability purposes, the remaining inquiry is whether the Board is responsible for that violation. *See id.* at 507.

A school board "cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the school district, leads to, causes, or results in the deprivation of a constitutionally protected right." *Id.* "A 'custom' for purposes of *Monell*

liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Liability cannot be imposed under a *respondeat superior* theory; rather, a plaintiff must show that the board itself is the wrongdoer. *Id.*

> To establish liability on a theory of inaction, as the McCoys do, the plaintiffs must establish:
>
> (1) the existence of a clear and persistent pattern of sexual abuse by school employees;
>
> (2) notice or constructive notice on the part of the School Board;
>
> (3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation.

*Id.* The absence of deliberate indifference pursuant to a Title IX claim is fatal to a companion municipal liability claim made under § 1983. *See Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 492 (6th Cir. 2006). That absence is dispositive here. As with their Title IX claim, the McCoys cannot demonstrate that the district's policy of inaction rose to the level of deliberate indifference. Accordingly, they cannot prevail on their municipal liability claim.

In truth, little in the record on appeal is devoted to developing and synthesizing the municipal liability claim. The bulk of the McCoys' briefs on appeal is devoted to Tornes' and Kunz's individual inactions and inadequacies. The best synthesis of their municipal liability claim, however, comes from the McCoys' motion for partial summary judgment:

> CCS employees and agents were given no direction as to what conduct to watch out for, when and how to report allegations of abuse, how to conduct a proper investigation, how to document and file relevant facts, how to communicate essential knowledge both between school administrators . . . and CCS administrators, or how to utilize disciplinary procedures in a manner that would not only respect faculty due process considerations but would protect student victims. . . .

In other words, the McCoys' § 1983 claim against the Board is that the Board had *no* policy, leaving individual complaints to be dealt with contextually per an administrator's discretion. While the McCoys attempt to classify this as an official policy of inaction, the mere showing of the absence of a policy is insufficient: the McCoys must also prove that the need to act was obvious and that the Board's decision not to have a policy in place was a conscious one. *See id.* Having failed to demonstrate both, the McCoys have no valid basis for asserting a § 1983 claim against the Board.

The McCoys also argue that the aggregate of instances in which an individual supervisor (e.g., Kunz or Tornes) failed to further investigate a reported incident collectively constitutes an official policy of inaction that reflected the Board's conscious decision to be deliberately indifferent. Even if it were true that these supervisors were recklessly passive and reckless in their failure to probe further into the allegations against Stroup, their collective failure to act was not a *Monell* custom in the sense that there was no conscious act on the part of the school board to deliberately engage in a course of action or inaction in light of Stroup's unconstitutional conduct. *See Doe*, 103 F.3d at 508. Therefore, the district court properly dismissed the McCoys' § 1983 claims against the Board.

B.

We turn next to the individual capacity claims. Qualified immunity protects government officials performing discretionary functions from liability so long as their conduct does not amount to a violation of clearly established statutory or constitutional rights of which a reasonable person would have known. *Andrews v. Hickman Cnty.*, 700 F.3d 845, 853 (6th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To ascertain whether a district court's decision concerning qualified immunity was properly decided, we proceed as follows:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). This is not, however, a mandatory sequence of analysis. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As noted above, a schoolchild's right to be free from sexual abuse is clearly established. Therefore, the only remaining inquiries are whether Harris' and Kunz's actions violated this long-established right, and whether there is sufficient evidence to demonstrate that their actions were objectively unreasonable.

From the outset, we hold that Superintendent Harris is not liable under a theory of supervisory liability, contrary to the McCoys' allegation. For such liability to attach, the official in question must "encourage[] the specific incident of misconduct or in some other way directly participate[] in it." *See Doe*, 103 F.3d at 513. This must be tantamount to tacit authorization of the

abuse. *Id.* As Superintendent Harris was not in her present position at the time the prior misconduct occurred, we cannot conclude that she is liable under a supervisory liability theory.

This leaves Kunz. In considering whether her actions (or lack thereof) violated Doe's rights, we must be mindful that the alleged deprivation must occur under the color of state law to constitute a cognizable violation. *See id.* at 511. Section 1983's color of law component requires that the individual be empowered with some legal obligation to act, either by statute or by judicial implication. *See id.* at 512. "If state law does not impose a duty to take action, 'there is no conduit through which an exercise of state power can be said to have caused the constitutional injury.'" *Id.*

This is where the McCoys' claim against Kunz falls short. Ohio law requires teachers, school employees, and other school authorities to immediately report knowledge or a suspicion that a child under the age of eighteen "has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child." Ohio Rev. Code § 2151.421(A)(1)(a) (2012). This standard, however, is a subjective one. *Kraynak v. Youngstown City Sch. Dist. Bd. of Educ.*, 889 N.E.2d 528, 531 (Ohio 2008). Nothing in the record suggests that Kunz had substantiated knowledge or suspicion as to any sexual misconduct by Stroup. While the incident concerning Stroup's touching of a student's thigh provided some scintilla of the potential for abuse, it appears her informal investigation extinguished any doubts in Kunz's mind as to the nature of the contact, thus eliminating the need to report such contact. Under the subjective standard, Kunz had no duty to report and thus did not act under the color of state law.

Relatedly, we note the absence of evidence demonstrating a strong likelihood that Stroup would attempt to sexually abuse other students. *See Doe*, 103 F.3d at 513. Plainly stated, Kunz did

not have much information to work with; the thigh-grabbing incident was resolved as non-sexual accidental contact. However sloppy, reckless, or neglectful Kunz's investigation and subsequent failure to follow up may have been, that alone is insufficient for § 1983 liability—the law requires deliberate indifference. *See id.* Hence, the district court properly granted summary judgment in favor of Kunz and Harris.

## IV.

The McCoys also appeal the district court's decision to dismiss their negligence and recklessness claims on grounds of the statutory immunity accorded by Ohio law. In doing so, they assert that public policy compels an abrogation of immunity in instances where school authorities fail to report "prior incidents that allowed the offending teacher to maintain the contact needed to serially abuse."

Whatever the wisdom of the McCoys' policy arguments may be, the reality is that Ohio law provides no valid basis for us to deprive the Appellees of state law immunity. Section 2744.02 of the Ohio Revised Code provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." School districts and the public education provided by such systems are considered political subdivisions and governmental functions, respectively. *See* Ohio Rev. Code §§ 2744.01(C)(2)(c), 2744.01(F).

The statute also provides exceptions to immunity. *See, e.g.*, *id.* § 2744.02(B). One such exception is for instances in which Ohio law statutorily imposes civil liability on the political

subdivision. *Id.* § 2744.02(B)(5). But that exception does not apply here. Section 2151.421, which codifies the reporting requirements for school authorities, does not expressly impose civil liability that fits within the parameters of section 2744.02(B)(5). The newly-added section 2151.421(M), which would otherwise allow for the imposition of civil liability, was enacted too late to apply to the facts of the present case. *See Roe v. Planned Parenthood S.W. Ohio Region*, 912 N.E.2d 61, 69 (Ohio 2009) ("[Section 2151.421(M)] affects a substantive right, and its retroactive application would violate due process.").

The McCoys argue that the cumulative effect of the prior events entitle the McCoys to rely on the earlier iteration of section 2744.02(B)(5), which excepted immunity in cases where there was *any* liability, either criminal or civil. In the spirit of the legislative desire to protect children from abuse, the McCoys posit that an exception for immunity as to the state law claims should be found.

As the district court properly noted, the appropriate audience for such an argument is "the Ohio General Assembly and not this Court." Lacking any guidance from the Ohio legislature and courts as to the wisdom of the McCoys' public policy arguments, we decline to conclude that public policy compels us to deprive the Appellees of immunity.

V.

Finally, we address an ancillary procedural argument. The McCoys assert an unusual conditional claim on appeal with respect to the district court's denial of their motion to amend: if we hold that the McCoys have no genuine dispute of material fact to survive summary judgment without Tornes as a defendant, then the district court's denial of their motion to amend their complaint to include him was an abuse of discretion that unduly prejudiced their claim. The

condition, however, is unnecessary. Regardless of whether Tornes is a party to the suit, the McCoys' claims cannot survive the summary judgment standard.

A district court's denial of a motion to amend the pleadings is reviewed for abuse of discretion. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). An abuse of discretion only arises if the decision leaves this court with a "definite and firm conviction that the trial court committed a clear error of judgment." *Hall v. Liberty Life Assurance Co. of Boston*, 595 F.3d 270, 275 (6th Cir. 2010).

Rule 15 of the Federal Rules of Civil Procedure allows amendment of a pleading once as a matter of course. Fed. R. Civ. P. 15(a)(1). Beyond that, a party may amend a pleading with either leave of court or the opposing party's written consent. Fed. R. Civ. P. 15(a)(2). Courts are encouraged to give leave "when justice so requires." *Id.* In determining whether a district court properly decided a motion for leave to amend the pleadings, we consider factors including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001). "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Id.*

The McCoys demonstrate none of the relevant factors in support of their argument. Their sole basis of claiming error is the fact that they were not aware of the full extent of Tornes' knowledge and authority until discovery was complete. As the district court noted, however, the McCoys were cognizant of Tornes' role in handling the allegations of abuse more than two months

prior to the deadline for filing all motions to amend under the pretrial scheduling order. The pleading standards allow for Tornes to be included as a defendant so long as the McCoys had sufficient facts that "state a claim to relief that is plausible on its face" and sufficient to "raise a right to relief above the speculative level." *See Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (citation omitted). While the McCoys contend that they were unaware of the *full* extent of Tornes' involvement until after the conclusion of discovery, the pleading standards do not require such exactitude. With little to excuse the tardiness of their amendment, we conclude that the district court did not abuse its discretion in denying the McCoys' motion for leave to amend the pleadings.

VI.

For these reasons, the decision of the district court is **AFFIRMED.**