RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0199p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ERICA BOJICIC, et al.,

*Plaintiffs*,

*v.*

RICHARD MICHAEL DEWINE, et al.,

*Defendants*,

DONNA SKODA; DAVID COVELL; JOSEPH MAZZOLA;
PETER SCHADE; KIRLAND NORRIS; ERIC ZGODZINSKI,

*Defendants/Movants-Appellees*,

THOMAS RENZ; ROBERT J. GARGASZ,

*Respondents-Appellants*.

> No. 24-3537

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:21-cv-00630—James G. Carr, District Judge.

Decided and Filed: July 30, 2025

Before: BOGGS, MOORE, and GRIFFIN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Richard C. Alkire, BUCKLEY KING LPA, Cleveland, Ohio, for Appellants. Frank H. Scialdone, MAZANEC, RASKIN AND RYDER CO., L.P.A., Cleveland, Ohio, for Appellees Skoda, Covell, Mazzola, Schade, and Norris. John A. Borell, Kevin A. Pituch, LUCAS COUNTY PROSECUTOR'S OFFICE, Toledo, Ohio, for Appellee Zgodzinski.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge.  In the early months of the COVID-19 pandemic, Ohio ordered "non-essential businesses" to close.  A group of dance-studio owners sued in federal court.  They alleged that various state and local officials had violated their constitutional rights by issuing those orders.  The district court dismissed the complaint for failure to state a claim, and we affirmed on August 22, 2022.  *Bojicic v. DeWine*, No. 21-4123, 2022 WL 3585636 (6th Cir. Aug. 22, 2022).  We held that Plaintiffs lacked standing against all Appellees except former Ohio Director of Public Health Amy Acton because Plaintiffs failed to plead traceability.  We also held that Plaintiffs' substantive-due-process claim and equal-protection claim both failed under rational-basis review.  And we affirmed the district court's rejection of Plaintiffs' takings claim, but on the different reasoning that, though a regulation intended to benefit public health could theoretically be a compensable taking, this one did not qualify under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).

Appellants now are attorneys Thomas B. Renz and Robert J. Gargasz — not their clients, who were Plaintiffs and appellants in the merits case.  After we affirmed the district court's grant of Defendants' motion to dismiss, the district court issued a sanctions order granting fees and costs against Appellants for their extensive legal failings throughout this case.  The attorneys appealed the orders issuing sanctions and granting fees and costs.  We affirm.

I

The full facts are set out in detail in our decision of August 22, 2022, *Bojicic*, 2022 WL 3585636, so we now focus on the most relevant procedural history.  The merits case was dismissed by the district court on October 27, 2021.  *Bojicic v. DeWine*, 569 F. Supp. 3d 669 (N.D. Ohio 2021).  At the end of this dismissal, the district court granted Defendants leave to move for sanctions if they "desire[d] to seek sanctions under Fed. R. Civ. P. 11, 18 U.S.C. § 1927, or this court's inherent power." *Id.* at 696.  The district court set out a schedule where any party could pursue sanctions by "fil[ing] an appropriate motion and supporting

memorandum" on or before November 30, 2021, after which Plaintiffs would respond on or before January 10, 2022, and Defendants would respond on or before January 30, 2022. *Ibid.* Appellees accepted this invitation and moved for sanctions at the end of November 2021. *Bojicic v. DeWine*, 714 F. Supp. 3d 913, 917–18 (N.D. Ohio 2024).

Then, on March 7, 2022, the district court issued an order directing Appellants to show cause why the district court "should not impose sanctions under Rule 11, § 1927, and [its] inherent power." *Id.* at 918. After a status conference, the district court scheduled an evidentiary hearing for July 11, 2022, to provide Appellants "a full opportunity to be heard and present any information they saw fit." *Ibid.* Three days before the hearing, Appellants moved for and were granted a continuance to allow time to recruit counsel to defend the sanctions proceeding. *Ibid.* Meanwhile, we affirmed the court's merits dismissal on August 22, 2022. *Ibid.* But Appellants secured new counsel around this time, so on October 12, 2022, the district court reset the evidentiary hearing on sanctions to February 13, 2023. *Ibid.* And then, because Plaintiffs petitioned the Supreme Court for a writ of certiorari on November 21, 2022, the district court granted Plaintiff's motion to stay the hearing pending the resolution of this petition. *Ibid.* The Supreme Court denied certiorari on January 18, 2023. *Bojicic v. DeWine*, 143 S. Ct. 735 (2023). The sanctions hearing was finally held on May 1, 2023. *Bojicic*, 714 F. Supp. 3d at 918.

The district court granted sanctions on January 31, 2024. Rule 11(c)(2) sanctions were unavailable. *Id.* at 918 n.2. The court had previously granted Appellants' motion for dismissal of the portion of Appellees' sanctions motions concerning Rule 11 sanctions, holding that Appellees had failed on "at least two opportunities to blow the safe harbor horn." Appellees had not, before filing their sanctions motions with the court, "provid[ed] notice of the alleged violations, which the opposing party [would] then [have had] 21 days to cure" under the safe-harbor period in Rule 11(c)(2). *King v. Whitmer*, 71 F.4th 511, 529 (6th Cir. 2023).

However, the court still granted sanctions sua sponte under Rule 11(c)(3). And it determined that sanctions were appropriate under 28 U.S.C. § 1927. It held that Appellants had not demonstrated "even a modest effort to conduct legal research before they filed the Complaint or their futile effort to oppose the Motions to Dismiss," that "[t]he number and extent of their errors infected the entire case" in "a consistent pattern . . . exhibited [by Appellants] in other

COVID-related litigations," and that, "[a]s attorneys, [Appellants] should have known that they had to support their claims and arguments with facts and law" but "failed at every turn." *Bojicic*, 714 F. Supp. 3d at 937–38. The court emphasized that "[n]othing that [Appellants] have said, written, or done persuade[d] [it] that they even attempted to satisfy the Rule 11 and § 1927 standards." *Id.* at 938. Pursuant to the court's order granting sanctions, Appellees submitted motions for attorney's fees and court costs. The district court granted the motions with a few reductions in amount. *Bojicic v. DeWine*, No. 3:21-cv-00630-JGC, 2024 WL 2188203 (N.D. Ohio May 15, 2024). The attorneys appealed.

## II

"A district court's decision to grant or deny sanctions" is reviewed for abuse of discretion. *Hall v. Liberty Life Assurance Co. of Bos.*, 595 F.3d 270, 275 (6th Cir. 2010). A court abuses its discretion if it "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Ibid.* (quoting *Geier v. Sundquist*, 372 F.3d 784, 789–90 (6th Cir. 2004)). We consider only litigation conduct before the district court and not any "conduct on appeal." *See Webster v. Sowders*, 846 F.2d 1032, 1040 (6th Cir. 1988).

## III

We discuss: (A) Rule 11 sanctions, (B) 28 U.S.C. § 1927 sanctions, and (C) fees and costs.

## A

Appellants argue that the district court abused its discretion in holding that they violated Rule 11. But based on the facts and the procedural history, we cannot conclude that the district court's ruling was "based . . . on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Apostolic Pentecostal Church v. Colbert*, 169 F.3d 409, 417 (6th Cir. 1999).

A court may impose sanctions under Rule 11 if:

[(1) An attorney] present[s] to the court a pleading, written motion, or other paper . . . for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions [do not] have evidentiary support or, if specifically so identified, will [not] likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are [not] warranted on the evidence or, if specifically so identified, are [not] reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b).

Rule 11 imposes both a requirement of "prefiling inquiry into both the facts and the law," *id.* advisory committee's note to 1983 amendment, and "a continuing responsibility to review and reevaluate . . . pleadings and where appropriate modify them to conform to Rule 11," *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335–36 (6th Cir. 1988). A district court may "[o]n its own" initiate the sanctions process by "order[ing] an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." FED. R. CIV. P. 11(c)(3).

First, the district court here was permitted to "impose[] Rule 11 sanctions sua sponte" because, before doing so, it correctly "order[ed] . . . counsel 'to show cause why conduct specifically described in the order has not violated Rule 11(b).'" *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 856 (6th Cir. 2010) (quoting FED. R. CIV. P. 11(c)(3)). In its October 27, 2021, order granting Appellees' motions to dismiss, the district court provided a detailed explanation of why "this suit and [Appellants'] complaint were as hapless as they were hopeless" because Appellants "utterly ignored basic pleading principles" and "their alleged substantive claims are entirely without any plausible merit." *Bojicic*, 569 F. Supp. 3d at 695–96. Then the district court in its March 7, 2022, show-cause order referenced its 2021 order's discussion of Appellants' "absolute failure to plead one or more meritorious or well-founded claims" and explained the decision "to hold an evidentiary hearing to explore attorneys Renz['s] and Gargasz's conduct and to give them an opportunity to show cause why they should not be sanctioned."

Second, we agree with the court's holding that Appellants violated Rule 11 because their complaint was "haphazard — at points, incomprehensibly so — and was littered with factual and

legal errors." *Bojicic*, 714 F. Supp. 3d at 922.  We reiterated many of these errors in our decision affirming the court's grant of the motion to dismiss.  *Bojicic*, 2022 WL 3585636, at \*4–9.  Simply put, Appellants' claims had no evidentiary support and were not warranted by existing law.

Regarding standing, their complaint "fail[ed] to identify any public-health orders," "never identifie[d] any specific action taken by any specific Defendant at all," and instead "lump[ed] the various Defendants together in a variety of vague, conclusory allegations."  *Id.* at \*2.

The only constitutional claims for which we and the district court could discern standing were those against Acton in her individual capacity.  *Id.* at \*4.  But as to their substantive-due-process claim, Appellants "d[id] not cite any cases for [their] proposition" that the right to work was a fundamental right subject to strict scrutiny.  *Ibid.*  Instead, they incorrectly conflated the required substantive-due-process analysis with questions under the Equal Protection Clause and the Privileges and Immunities Clause.  *Id.* at \*5.  We emphasized that their various "bare citation[s] . . . d[id] not bridge the gap in support for [their] position." *Ibid.*  In ultimately considering Appellants' "bald[] claim[s]" under rational-basis review, we held that they "ma[d]e no colorable argument that [the bar for rational basis] has not been met here" and thus that this claim was "meritless."  *Id.* at \*6.

Regarding equal protection, Appellants misunderstood and necessarily failed to make the required showings under the appropriate legal standard.  Instead of identifying any similarly situated businesses that were treated differently, Appellants "generally complain[ed] that the shutdown orders arbitrarily distinguished between essential and non-essential businesses," which we "generous[ly] infer[red]" to be a disparate-treatment argument that still failed on the merits because Appellants could not plausibly assert that the strenuous physical activity that occurs in a dance studio typically occurs at a grocery store or gas station.  *Id.* at \*6–7.  Appellants again failed to grasp the legal standard for rational-basis review when, in "what seem[ed] to be their thesis," they argued that the orders were neither applied equally nor empirically demonstrated to reach a certain level of effectiveness — an argument with no basis in equal-protection law.  *Id.* at \*7.

Finally, regarding takings, Appellants "presented without any factual support" the "extraordinary assertion" that "unconscious or implicit bias towards the official government narrative on the dangers posed by [COVID-19] and the unscientific methods for its containment" was demonstrated by the Defendants' statement that the order was made "to protect public health . . . in the face of a fast-spreading and novel virus." *Id.* at *9. We criticized this statement as not only "presuppos[ing] conspiratorial bad faith on the part of a variety of state officials, [but also] ignor[ing] the fact that these orders were issued at the very beginning of the pandemic, when no government official could possibly have had the kind of information about the efficacy of its particular actions that [Appellants] demand." *Ibid.* Appellants "ma[d]e no specific argument that the post-reopening masking requirement constituted a taking." *Ibid.* Appellants instead argued that strict scrutiny applied by citing a Supreme Court of Ohio case interpreting the Ohio Constitution, when that case "*expressly* deviated from the more government-deferential standard under the United States Constitution." *Bojicic*, 714 F. Supp. 3d at 926 (citing *Norwood v. Horney*, 853 N.E.2d 1115, 1136 (Ohio 2006)). We agree with the district court that "[t]he extent of this error" especially underscored Appellants' "lack of investigation and research" to "support their contentions with authority" — a critical and continuing responsibility under Rule 11. *Id.* at 927.

Appellants repeatedly made bare, conclusory, and unsupported arguments. And they failed to satisfy their Rule 11 responsibilities to present factual contentions with evidentiary support and legal claims as warranted by existing law. Accordingly, we affirm the district court's sua sponte imposition of Rule 11 sanctions on Appellants after the show-cause hearing.

B

An attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 applies "even in the absence of any conscious impropriety." *Hall*, 595 F.3d at 275 (citation modified). Thus, "[t]he proper inquiry is not whether an attorney acted in bad faith; rather, a court should consider whether an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Id.* at

275–76 (citation modified). "A legal contention is frivolous if it is 'obviously without merit' under existing law and unsupported by a good-faith argument to change or extend the law." *King*, 71 F.4th at 528 (quoting FED. R. CIV. P. 11(b)(2)).

Appellants' frivolous claims abounded in this case. As we discussed with Rule 11 sanctions, various major claims made by Appellants were obviously without merit and entirely misunderstood the appropriate legal standards. Even though our standard for section 1927 sanctions does not require bad faith, Appellants reasonably should have known, based on the legal-research obligations owed to the court by members of the bar, that their claims had no legal basis.

In *Ridder v. City of Springfield*, we held that an attorney was liable for "conduct that amounted to unreasonable and vexatious multiplication of the proceedings" because he "brought suit . . . without any evidence to support a basis for . . . liability, and he persisted in pressing the allegations for over five years, . . . . long after it should have become clear that the claims lacked any plausible factual basis." 109 F.3d 288, 298 (6th Cir. 1997). The attorney's conduct there "fell short of the obligations owed by a member of the bar" because his "failure to withdraw the claims . . . forced the [defendant] to defend this action for a period in excess of five years." *Id.* at 299. We also emphasized that, though "we remain sensitive that an award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, . . . . a civil rights plaintiff does not have free rein to bring and pursue frivolous claims." *Ibid.* (citation modified).

Here, too, for over four years various Ohio government officials have been repeatedly haled into court and forced to defend against Appellants' frivolous claims. For example, as the district court described it, Appellants "entirely disregarded th[e] indisputably clear-cut and irrefutable authority" of *League of Independent Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125 (6th Cir. 2020). *Bojicic*, 714 F. Supp. 3d at 936. In that case, we held (about eight months before Appellants filed their complaint) that Michigan business-closure orders very similar to the ones at issue here "passe[d] muster under the rational basis test." *League of Indep. Fitness Facilities & Trainers*, 814 F. App'x at 129. Plaintiffs there were indoor fitness facilities who were ordered by the Michigan governor to completely close. *Ibid.* They argued that the

order's differential treatment of "bars, restaurants, and salons" — which could open with restrictions — violated the Equal Protection Clause. *Id.* at 127.

We rejected this argument because "[t]he idea that heavy breathing and sweating in an enclosed space containing many shared surfaces creates conditions likely to spread the virus is a paradigmatic example of 'rational speculation' that fairly supports the Governor's treatment of indoor fitness facilities." *Id.* at 129. Given that "we must 'accept [a government's] generalizations even when there is an imperfect fit between means and ends,'" we also recognized the legal irrelevance of those plaintiffs' argument that Michigan's order was "unsupported by evidence or empirical data." *Ibid.* (quoting *Heller v. Doe*, 509 U.S. 312, 321 (1993)).

"Surely, at that point, [Appellants] should have proceeded cautiously when asserting the same claims" again. *Ridder*, 109 F.3d at 299. But they continued, and thus section 1927 sanctions were appropriate. While *League of Independent Fitness Facilities & Trainers* was unpublished and thus not dispositive, we do agree with the district court that *League of Independent Fitness Facilities & Trainers* "was practically a mirror to the facts and legal issues in this case" and that our application of the law there to indoor fitness facilities is "pertinent to the case here." *Bojicic*, 714 F. Supp. 3d at 930. Our holdings in *League of Independent Fitness Facilities & Trainers* clearly show not only the proper application of rational-basis review in assessing this sort of COVID-19 business-closure order but also our explicit rejection of the empirical-data argument that Appellants raised. Thus, we affirm the grant of section 1927 sanctions. Appellants' failure to discuss *League of Independent Fitness Facilities & Trainers* in their brief in opposition to Defendants' motion to dismiss — even after the Defendants had called the case to Appellants' attention — "fell short of the obligations owed by a member of the bar" and reflected the unreasonable multiplication of proceedings whose legal and factual bases were implausible from the start. *Ridder*, 109 F.3d at 299.

C

Appellants argue that there are two reasons why the relevant motions for fees and costs should not have been granted.  Their first reason is that there is no basis for fees and costs under 28 U.S.C. § 1927.  We reject this argument for the reasons discussed above.

Their second reason is that "certain fees and costs sought were not made reasonably necessary due to any conduct on the part of Renz and Gargasz but because the matter was not stayed during the pendency of the appeals or not supported by the motions."  We reject this argument because the fees and costs sought arose from Appellants' insufficient legal research at and after the prefiling stage.  The district court is empowered to order any attorney who violates section 1927 "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Appellants' legal failings are the clear basis of the sanctions, and such conduct continued throughout the proceedings.

\*          \*          \*

The district court's order imposing sanctions under both applicable bases is careful, well-reasoned, and amply supported by the facts of Appellants' conduct.  The district court cited myriad examples of this conduct — including Appellants' failure to move to amend their original frivolous complaint, their failure to conduct meaningful legal research at any point in the litigation, and their ignorance of critical legal authority — to support its conclusion that the extent of their errors infected the entire case.  And this infection was egregious enough that the extreme sanction of attorney's fees against losing plaintiffs in a civil-rights action was warranted.  Thus, nothing in the district court's sanctions order appears to have been based on an erroneous view of the law or the evidence.  We **AFFIRM** the district court's holding that Appellants violated Rule 11 and section 1927.  We also **AFFIRM** the district court's grant of attorney's fees and costs.